IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TIMOTHY MCCALLAN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-CV-117-WKW |
| | ) | (WO) |
| CARLY B. WILKINS, | ) | |
| as Trustee for Debtors Allegro Law, | ) | |
| LLC and Allegro Financial Services, | ) | |
| LLC, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the following motions: (1) Defendant/Appellant Timothy

McCallan's amended motion (Doc. # 1-1) for leave to file an interlocutory appeal;

(2) McCallan's Emergency[1] Motion (Doc. # 2) to expedite the appeal pursuant to

Rule 8003(a)(2)(B) of the Federal Rules of Bankruptcy Procedure; (3) Appellee

Carly B. Wilkins's motion (Doc. # 3) to dismiss for lack of jurisdiction; (4)

Appellee's motion (Doc. # 5) to strike the motion for leave to expedite the appeal;

---

[1] Although designated an "emergency" motion, the motion does not comply with Rule 8013(d)(2) of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. Rule 8013(a)(2)(B) ("A motion to expedite an appeal may be filed as an emergency motion under subdivision (d)."); Fed. R. Bankr. P. R. 8013(d)(2) (requiring that an emergency motion "be accompanied by an affidavit setting out the nature of the emergency" and "state whether all grounds for it were submitted to the bankruptcy court and, if not, why the motion should not be remanded for the bankruptcy court to consider"). Among other deficiencies, the motion lacks an affidavit.

and (5) Appellee's motion to strike McCallan's brief in support of the appeal (Doc. # 14). The court concludes that the motion to dismiss for lack of jurisdiction is due to be granted, the motion for leave to file an interlocutory appeal is due to be denied on the merits, and the remaining motions are due to be denied as moot.

## I.   PROCEDURAL HISTORY

On October 6, 2016, the bankruptcy court held McCallan in civil contempt of court for willful failure to comply with a previous order to compel postjudgment discovery by, among other things, submitting discovery responses that he knew were incomplete and offering meritless excuses for his failure to fully and accurately respond to discovery. (Doc. # 7-7.) The October 6, 2016 Order did not impose sanctions on McCallan (despite a motion for sanctions from the opposing party), but did require McCallan to purge himself of contempt "not later than October 18, 2016" by supplying truthful and accurate answers to certain interrogatories and complying with a request for production of documents. (Doc. # 7-7.)

At no time since October 6, 2016, did the bankruptcy court find that McCallan had purged himself of contempt. Since then, however, the bankruptcy court's efforts to prod McCallan into compliance have been ongoing. By Order entered October 21, 2016, the bankruptcy court found that McCallan had "perpetrated a fraud upon the Court by misrepresenting the reasons [a Florida[2] hurricane and the death of a

---

[[2] McCallan lives in Melbourne, Florida.

nephew] that he failed to purge himself of contempt and instead seeking additional time . . . for the purpose of moving, hiding, or otherwise disposing of assets that could otherwise be used to satisfy the judgment against him in this matter." (Doc. # 7-8 at ¶¶ 2-3.) Accordingly, the bankruptcy court held that McCallan "remains in contempt, has failed to purge himself of contempt, and has committed additional acts of contempt since the October 6, 2016 hearing." (Doc. # 7-8 at ¶ 4.) The bankruptcy court directed McCallan to comply with additional discovery requests, provide an accounting of $498,000.00 in a certain Wells Fargo bank account, and refrain from making any additional transfers of the $498,000.00 "that he swore under penalty of perjury was in" the Wells Fargo account. (Doc. # 7-8 at ¶¶ 8-10.) The bankruptcy court warned that, if McCallan did not comply with all discovery obligations within the next seven days, the bankruptcy court would order him arrested and brought before it. (Doc. # 7-8 at ¶ 11.)

McCallan did not comply with the requirements of the October 21, 2016 Order. For reasons not immediately apparent from the relatively limited selection of documents included in the designated record on appeal, the Bankruptcy Court did not order McCallan arrested until approximately one year later. On the Certified Docket sheet (Doc. # 1-3), one-hundred and twenty-three entries are recorded between October 21, 2016 and August 22, 2017. Those entries demonstrate that, during that time, the bankruptcy court continued to manage ongoing discovery

3

disputes and engage in attempts to prompt McCallan to comply with his discovery obligations.  By Order entered August 22, 2017, following an evidentiary hearing on pending motions for sanctions, the bankruptcy court held that McCallan was "in default on numerous obligations to provide discovery," had not provided an accounting of the money in the Wells Fargo account, and "ha[d] been in contempt of court at all times since this Court entered its order of October 6, 2016."  (Doc. # 7-12 at 1-2.)  The bankruptcy court ordered McCallan to comply with all outstanding discovery requests, supplement all postjudgment discovery, and provide a complete accounting (through September 15, 2017) of the Wells Fargo bank account.  (Doc. # 7-12 at 2.)   The bankruptcy court set September 15, 2017, as the deadline for compliance and set another hearing for October 23, 2017, to review whether McCallan had purged himself of contempt.  (Doc. # 7-12 at 2.)

In an order entered September 13, 2017, the bankruptcy court considered McCallan's motion for extension of time to produce the outstanding discovery because of another Florida hurricane.  The bankruptcy court noted McCallan's "history of misrepresenting the effects of natural disasters on his ability to prepare," the absence of an affidavit or any specifics as to the difficulties caused by the hurricane, the fact that McCallan's compliance efforts should have been mostly completed before the hurricane arrived if other allegations in the motion truthfully represented the diligence of his efforts to comply, and the fact that the hurricane

tracked further west than originally forecast, further minimizing any potential effect on McCallan.  (Doc. # 7-13 at 1.)   Nevertheless, the bankruptcy court granted McCallan one additional week, until September 22, 2017, to comply.  (Doc. # 17-13 at 2.)

On October 23, 2017, the bankruptcy court held a hearing to determine whether McCallan had purged himself of contempt.  (Doc. # 7-14.)  At the hearing, the bankruptcy court ordered McCallan jailed for contempt after finding that McCallan's claims that he had complied with the court's orders were false.  (Doc. # 7-14.)  By written order dated October 23, 2017, the bankruptcy court explained:

> McCallan is in direct civil contempt for his failure to produce post judgment discovery as required by the Court's Order of August 22, 2017.[3]   McCallan's incarceration is civil in nature and therefore coercive and not punitive.  McCallan holds the keys to his jail cell in his pocket. He need only produce the required discovery, or prove that he cannot, to secure his release.  The Court notes that McCallan filed a Response on October 16, 2017, contending that he was in compliance with the August 22, 2017 order. . . .   Indeed, at the opening of [the] October 23, 2017 hearing, McCallan argued through counsel that he was in full compliance with all obligations.  At the end of the day, on October 23, 2017, it was clear that McCallan's claims of compliance were false. McCallan appeared to be changing his position, arguing alternatively, that either he had fully complied, or that he could not comply because he did not have the means.  These claims are mutually exclusive.

(Doc. # 7-14 at 1-2.)

---

[3 The August 22, 2017 Order required compliance with unfulfilled responsibilities imposed by the October 6, 2016 Order.]

5

The bankruptcy court "cautioned [McCallan] that, to purge himself of contempt[,] he must demonstrate that he has fully disclosed all of the matters requested to the best of his ability" and that, "given McCallan's long history of lying to the Court and flouting its orders, he is cautioned that he must be candid with [Appellee] and with the Court." (Doc. # 7-14.) The bankruptcy court set another hearing, this time for November 6, 2017, to "review McCallan's efforts to come into compliance" with the court's orders. (Doc. # 7-14 at 2-3.)

McCallan "did not produce any further documents or materials at the time of the November 6, 2017 hearing, but promised that discovery would be forthcoming." (Doc. # 7-16 at 1.) McCallan did represent that he had downloaded his responses to "Dropbox" folders (a cloud-based electronic method of document storage), which he would make available to Appellee. The bankruptcy court noted that "this is precisely the same representation made in advance of the October 23, 2017, hearing, which was shown to be incorrect." (Doc. # 7-15.) The bankruptcy court further noted that, had McCallan provided access to the Dropbox files on a more timely basis, Appellee and the court would have been able to review the files before the hearing. The bankruptcy court characterized the Dropbox maneuver as a "'document dump' . . . in an effort to prevent [Appellee] from examining the production" and noted that it was the second time McCallan had used the maneuver immediately prior to a hearing to determine whether he had purged himself of

6

contempt, despite orders designed to require him to submit his compliant materials sufficiently in advance of the hearing.  (Doc. # 7-15 at 2; Doc. # 7-16.)  The court cautioned that "another document dump in advance of the next hearing will not be well received."  (Doc. # 7-15 at 2-3.)  The court set another hearing for November 16, 2017, to review whether McCallan had purged himself of contempt.  (Doc. # 7-15 at 3.)

Despite the warnings of the November 7, 2017 Order against a last-minute "document dump" before the next scheduled evidentiary hearing, McCallan again performed another "document dump" of "a large number of documents" two days before the November 16, 2017 hearing.  At a November 15, 2017 status conference to discuss that "document dump," McCallan's lawyer admitted that McCallan's submissions still were not complete.  (Doc. # 7-16.)  Due to the "last minute document dump," the November 16, 2017 hearing was postponed and a status conference was set for January 9, 2018, at which the bankruptcy court would consider "whether yet another evidentiary hearing is appropriate."  (Doc. # 7-16.)  The bankruptcy court set a December 15, 2017 deadline for production of outstanding discovery and other materials.  (Doc. # 7-16.)

On December 23, 2017, McCallan filed a motion to quash the contempt finding and for release from custody (Doc. # 12-7), in which he argued that he had

already purged himself of contempt and that his continued incarceration was punitive.

Following the January 9, 2018 status conference, the bankruptcy court entered a written order on January 16, 2018. (Doc. # 7-17.) It briefly described the history of the case and noted that McCallan's lawyer at the time of trial and in the early phases of postjudgment discovery had been disbarred by the Alabama State Bar in conjunction with his conduct in the case, including efforts to thwart discovery. (Doc. # 7-17.) The bankruptcy court noted McCallan's motion to quash the contempt finding and for release from custody and expressly rejected the contention in that motion that McCallan's continued incarceration was punitive because he had already produced all responsive documents. (Doc. # 7-17.) The bankruptcy court set another hearing, this time for January 30, 2018, to resolve the dispute over whether McCallan had purged himself of contempt. (Doc. # 7-17.)

On January 30 and 31, 2018, the bankruptcy court held a hearing to determine whether McCallan had purged himself of contempt. Following that hearing, the bankruptcy court entered a written order on February 6, 2018. (Doc. # 1-1 at 8.) In the February 6, 2018 Order, the bankruptcy court noted its finding, previously announced from the bench at the hearing, that McCallan had failed to purge himself of contempt. However, in the February 6, 2018 Order, the bankruptcy court did not expressly rule on McCallan's motion to quash the contempt finding or for release

8

from incarceration.  Instead, the bankruptcy court announced its intent to enter written findings of fact and conclusions of law following briefing by both parties, for which the court set deadlines.  (Doc. # 1-1 at 9.)

The bankruptcy court further found that the record, the voluminous documentary evidence presented, and the nature of the production to date made a "daunting task" of determining the precise contours of the remaining contempt dispute.  (Doc. # 1-1 at 9.)  The bankruptcy court then ordered that, before it held any additional evidentiary hearings to review whether contempt had been purged, McCallan would be required to demonstrate that he had purged himself of contempt by complying with the following conditions: (1) he must provide updated responses to specifically enumerated discovery requests; (2) he must file an updated accounting for the $498,000 that was in the Wells Fargo account; (3) he must amend his bankruptcy schedules and statement of financial affairs in bankruptcy Case No. 17-30961; and (4) he must file a certification that he has complied with the February 6, 2018 Order.  (Doc. # 1-1 at 10.) The bankruptcy court further ordered that, within thirty days of the filing of the certification, Appellee must file a response stating whether she agreed that McCallan's responses were complete.  (Doc. # 1-1 at 10.) If no further controversy remained, the bankruptcy court would immediately release McCallan from jail.  If further controversy remained, the court would hold more

hearings to determine whether McCallan had purged himself of contempt.  (Doc. # 1-1 at 10.)

On February 15, 2018, McCallan filed a notice of appeal from the February 6, 2018 Order or, in the alternative, a motion for leave to file an interlocutory appeal from the February 6, 2018 Order pursuant to 28 U.S.C. §158(a)(3) and Rule 8004 of the Federal Rules of Bankruptcy Procedure.  (Doc. # 1.)  On February 22, 2018, this court entered an Order (Doc. # 8) requiring the parties to submit briefing on the question of this court's subject-matter jurisdiction.  The parties have submitted briefs in compliance with the February 22 Order.  (Doc. # 9; Doc. # 13.)

## II.   ANALYSIS

### A.   <u>**Appeal as of Right from a Final Order**</u>

Pursuant to 28 U.S.C. § 158(a)(1) and Rule 8003 of the Federal Rules of Bankruptcy Procedure, an appeal as of right may be taken to the district court from a final order of the bankruptcy court.[4]  Appellee argues that the February 6, 2018 Order is not a final order of the bankruptcy court because it does not end the litigation on the merits, leaving nothing for the trial court to do but execute on the decision. In determining the finality of an order "[i]n bankruptcy proceedings, it is generally the particular adversary proceeding or controversy that must have been finally

---

[4] Pursuant to 28 U.S.C. § 158(a)(2) and Rule 8003 of the Federal Rules of Bankruptcy Procedure, an appeal as of right may be taken from certain other orders of the bankruptcy court. McCallan does not argue that he has a right to appeal under § 158(a)(2).

resolved, rather than the entire bankruptcy litigation." *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985).

The February 6, 2018 Order represents the outcome of a hearing held on January 30-31, 2018, to review whether Appellant, who had already been in jail for civil contempt since October 23, 2017, had purged himself of contempt. The bankruptcy court stated in its February 6, 2018 Order that it intends to receive briefs from the parties (the second of which is not due until today, March 19, 2018) and enter written findings of fact and conclusions of law regarding its determination that McCallan has not yet purged himself of contempt.[5]   (Doc. # 1-1 at 9.)   The bankruptcy court intends to further consider whether McCallan purged himself of contempt after McCallan complies with the directives in the February 6, 2018 Order. In short, the February 6, 2018 Order does not resolve the contempt controversy.

Accordingly, the February 6, 2018 Order is not a final order from which an appeal may be taken as of right pursuant to 28 U.S.C. § 158(a)(1).  *See Catlin v. United States*, 324 U.S. 229, 233 (1945) (defining a "final decision"); *In re Charter*

---

[5] The lack of written findings of fact and conclusions of law does not, in and of itself, prevent a finding of finality. *See* Fed. R. Bankr. P. 8002(a)(2) ("A notice of appeal filed after the bankruptcy court announces a decision or order—but before entry of the judgment, order, or decree—is treated as filed on the date of and after the entry.").  However, as part of the briefing requested in the February 6, 2018 Order, the bankruptcy court invited McCallan to submit a brief in which McCallan would be permitted to argue that the bankruptcy court should make additional findings or that the bankruptcy court "missed something, or misinterpreted the evidence."  (Doc. # 1-1 at 19.)  Thus, the briefing schedule offers McCallan a further opportunity to contest the bankruptcy court's findings prior to entry of written findings of fact and conclusions of law.

*Co.*, 778 F.2d at 621 ("Although courts 'take a more liberal view of what constitutes a separate dispute for purposes of appeal' in bankruptcy cases, *In re Leimer*, 724 F.2d 744, 745 (8th Cir. 1984), the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do."); *see also United States v. Hallahan*, 768 F.2d 754, 754 (6th Cir. 1985) (finding lack of appellate jurisdiction where the contemnor did not timely appeal the original contempt order, which was final and appealable, but instead appealed a subsequent interlocutory order that "set[ ] forth the conditions [the contemnor] must meet to purge himself of the [earlier] contempt order"). *Cf. Powers v. Chi. Transit Auth.*, 846 F.2d 1139, 1141 (7th Cir. 1988) (citing "a line of cases dating to 1880" holding that a civil contempt order, "including an order committing a party to jail pending compliance, "is not a 'final decision' under [28 U.S.C.] § 1291").

The court has, on its own, located opinions by courts in other circuits holding that, in limited circumstances, an order denying a motion to purge contempt or to lift continuing contempt sanctions is a final, appealable order, at least where the motion itself raises new issues that were not available at the time of the original contempt finding or the original imposition of sanctions.[6]  However, that line of cases (which

---

[6] *See, e.g., United States v. Brumfield*, 188 F.3d 303, 306-07 (5th Cir. 1999) (holding that an order was "final" and "a new right to appeal [was] triggered" where the challenged order denied a motion in which the contemnor argued that he had purged himself of contempt by submitting additional material after the original contempt finding); *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 594 (6th Cir. 1999) (reviewing an appeal from a "motion to purge . . . on a ground [that was] not previously available and [was] not argued in [contemnor's] initial motion to purge, i.e., that

12

represents merely persuasive authority) does not support a finding that the February 6, 2018 Order is a final judgment because McCallan, who bears the burden of demonstrating the existence of subject matter jurisdiction on appeal,[7] did not cite or rely on the rationale of those cases.

Further, McCallan does not contend that, after the entry of the October 23 and 24, 2017 Orders, he took additional, adequate steps[8] to purge himself of contempt, or that new circumstances have arisen since that time that render him unable to comply. *Cf. United States v. Brumfield*, 188 F.3d 303, 306-07 (5th Cir. 1999) (holding that an order was "final" and "a new right to appeal [was] triggered" by denial of a motion in which the contemnor argued that material submitted after the original contempt finding had purged the contempt).

---

the contempt order . . . was now moot"); *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 99 F.3d 1134 (5th Cir. 1996) (noting that the contemnor's third motion for release from confinement and motion to vacate the original order of contempt "contain[ed] several grounds which did not exist at the time the contempt order was entered, and it is these issues that [the court would] consider on appeal"); *United States v. Wheeler*, 952 F.2d 326, 327 (9th Cir. 1991) ("We hold that a[n] order refusing to vacate an underlying contempt order is nonappealable when the ground on which vacatur is sought existed at the time the contempt order was entered and the contemnor failed to appeal timely from that order.").

[7] The appellant bears the burden of demonstrating finality and the existence of appellate jurisdiction. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1423 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994).

[8] McCallan did subject the court and Appellee to additional "document dumps" in November 2017 in violation of the bankruptcy court's orders, but he also conceded that those "document dumps" did not complete his outstanding production obligations. (Doc. # 7-16 at 2.)

13

In McCallan's December 23, 2017 motion to quash the contempt finding and for release from custody (Doc. # 12-7), he stated that he had already produced all documents within his custody and control. McCallan presented a chart of "the items required by the Show Cause Order and when those were provided." (Doc. # 12-7 at 3 ¶ 7.) The chart indicated disclosure dates no later than October 16, 2017. Thus, the argument that those disclosures purged McCallan of contempt was available at the time of the October 23, 2017 hearing. In fact, at the October 23, 2017 hearing (at which McCallan was jailed for contempt) and in the October 24, 2017 Order, the bankruptcy court expressly considered *and rejected* McCallan's argument that disclosures made through October 16, 2017, were sufficient to purge the contempt, or, alternatively, that McCallan was unable to engage in further acts of compliance. (Doc. # 7-14 at 1-2.)[9] The other arguments McCallan raised in his December 23, 2017 motion to quash were also available to him at the October 23, 2017 hearing: specifically, that the bankruptcy court did not afford him the constitutionally

---

[9] Specifically, the bankruptcy court stated:

McCallan filed a Response on October 16, 2017, contending that he was in compliance with the August 22, 2017 order. . . . Indeed, at the opening of October 23, 2017 hearing, McCallan argued through counsel that he was in full compliance with all obligations. At the end of the day, on October 23, 2017, it was clear that McCallan's claims of compliance were false. McCallan appeared to be changing his position, arguing alternatively, that either he had fully complied, or that he could not comply because he did not have the means. These claims are mutually exclusive.

(Doc. # 7-14 at 1-2.)

required procedural protections for imposition of criminal contempt sanctions, and that his incarceration exceeded the bankruptcy court's statutory and constitutional authority to impose significant punitive sanctions.  (Doc. # 12-7.)  The bankruptcy court rejected those arguments in its October 24, 2017 Order (Doc. # 7-14 at 1-2) and again in its January 16, 2018 Order.  (Doc. # 7-17.)

Moreover, McCallan has not stated what new (post-October 2017) evidence of compliance or change in circumstances, if any, he presented to the bankruptcy court for consideration at the January 30-31, 2018 hearing.  In fact, as Appellee points out in her motion to dismiss,

> [i]t is undisputed that McCallan offered no evidence at the January 30, 2018 evidentiary hearing. Despite having the burden of proof, McCallan's counsel stated at the outset of the hearing that "we have no presentation, we just have rebuttal . . . we have nothing to present at this time."

(Doc. # 3 at 16 (quoting Doc. # 11-17 at 6).)

Accordingly, McCallan has not demonstrated that, in seeking to purge himself of contempt, he presented argument or evidence that was unavailable to him at the time of the bankruptcy court's October 23 and 24, 2017 Orders finding him in contempt and imposing a sanction of incarceration—orders that McCallan could have—but did not—timely attempt to appeal.  Therefore, unlike other cases where changed circumstances or additional attempts to comply formed the basis of a rejected motion to purge or for release from sanctions, this case does not implicate

the concern that "one who, subsequent to being jailed for contempt, has taken steps which he contends should purge himself of contempt should be afforded an effective avenue of review" of the denial of his motion for relief. *Brumfield*, 188 F.3d at 307. Instead, a finding that the February 6, 2018 Order is "final" would undermine the very concept and purpose of the finality requirement and ignore the practicalities of the situation[10] by allowing McCallan to challenge the October 2017 contempt finding and incarceration sanction long after the time to appeal has run and without either (1) taking further meaningful steps to purge contempt or (2) presenting evidence of changed circumstances that render compliance newly impossible. McCallan could simply (and potentially repetitively) tie up the bankruptcy court proceedings and prosecute multiple appeals merely by repeatedly filing motions to purge contempt or motions for release regardless of any change in circumstances. Therefore, the court finds inapposite out-of-circuit authority holding that an order denying a motion to purge contempt or to lift continuing contempt sanctions is a

---

[10] *See In re Martin Bros. Toolmakers, Inc.*, 796 F.2d 1435, 1437 (11th Cir. 1986) (noting that "[t]he traditional rule narrows the concept of finality to avoid waste of judicial resources and the delay inherent in piecemeal litigation" and that the collateral order doctrine so frequently applied in bankruptcy cases "provides that an order resolving issues independent and easily separable from the other claims in the action may be reviewed if delay would prejudice important interests of the parties and if practical rather than technical factors also favor immediate review"); *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1548 (11th Cir. 1996) (holding that, in bankruptcy cases, the determination of finality must be "grounded in the practicalities of the situation" (quoting *Martin Bros. Toolmakers*, 796 F.2d at 1437).

final, appealable order if the motion asserts new grounds for relief that were not previously available.

Further, for two independent reasons, the court is not inclined to construe the February 6, 2018 Order as a denial of a motion for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Rule 9024 of the Federal Rules of Bankruptcy Procedure. First, McCallan has not requested that the court so construe the proceedings. Second, even if February 6, 2018 Order were construed as a denial of a motion for relief from judgment or order pursuant to Rule 60(b), an appeal would be fruitless because McCallan's motion did not assert grounds for relief from incarceration that were unavailable at the time of the October 2017 Orders imposing the sanction. *See In re Hollowell*, 242 B.R. 541, 542–43 (Bankr. N.D. Ga. 1999) ("Motions for reconsideration [under Rule 60(b) and Rule 9024] should not be used to relitigate issues already decided or as a substitute for appeal. . . . Such motions also should not be used to raise arguments which were or could have been raised before judgment was issued."); *see also Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 99 F.3d 1134, 1134 & n.3 (5th Cir. 1996) (unpublished opinion) (suggesting that, rather than finding a lack of appellate jurisdiction, an appellate court could have affirmed the denial of a motion to vacate a contempt sanction on the merits because "the ground on which the vacatur [was] sought existed at the time the contempt order was entered and the contemnor failed to appeal timely from that

order").  *Cf. Consol. Rail Corp. v. Yashinsky*, 101 F.3d 702, 702 (6th Cir. 1996) (unpublished opinion) (holding that an appeal lacked merit where "failure to take a direct appeal from the imposition of the contempt preclude[d] . . . examination of the propriety of the . . . decision to impose the contempt citation" and mere "continued recalcitrance" after the initial contempt citation did not "qualify as the equity needed for relief under Rule 60(b)(6)").

## B.   Permissive Appeal from an Interlocutory Order

28 U.S.C. § 158(a)(3) and Rule 8004 of the Federal Rules of Bankruptcy Procedure allow appeals "with leave of the court, from . . . interlocutory orders and decrees."   The district court has discretion in determining whether to allow an interlocutory appeal.  *Matter of Ichinose*, 946 F.2d 1169, 1176-77 (5th Cir. 1991).[11] "Section 158(a) authorizes a district court to grant leave to appeal an interlocutory order from a bankruptcy court, but does not indicate the standard a district court should use in determining whether to grant leave to appeal."   *Id.* at 1177. "Nonetheless, district courts faced with the problem have adopted the standard under 28 U.S.C. § 1292(b) for interlocutory appeals from district court orders," which "consists of three elements: (1) a controlling issue of law must be involved; (2) the question must be one where there is substantial ground for difference of opinion; and

---

[11] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

(3) an immediate appeal must materially advance the ultimate termination of the litigation." *Id.* In this case, the court's discretion is also tempered by the general rule that an interlocutory finding of civil contempt ordinarily is not subject to an interlocutory appeal, but is reviewable only upon appeal from a final order. *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1515 (11th Cir. 1990) ("[A] finding of civil contempt is generally not reviewable on interlocutory appeal."); *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 977 (11th Cir. 1986) (applying the "general rule" of non-appealabilty to a contempt order that did not terminate a postjudgment proceeding).

There are exceptions to the general rule against appealability of interlocutory civil contempt orders. "An order that imposes a fine or penalty for contempt that must be obeyed within a certain period and may not be avoided by some other form of compliance is immediately appealable, but an order of contempt that imposes a fine or penalty that the party in contempt can avoid by complying with the earlier order is interlocutory and not appealable." *S.E.C. v. Kirkland*, 533 F.3d 1323, 1325 (11th Cir. 2008). The February 6, 2018 Order does not fit neatly into either of those two categories because it did not make any new finding of contempt or impose any new penalty or new sanction for contempt. Rather, the February 6, 2018 Order was the product of the bankruptcy court's ongoing effort to determine (1) whether McCallan was still in contempt as found in previous orders that are not the subject of this appeal (nor could they be, as any appeal from those prior orders would be

19

untimely)[12] and (2) whether the sanction (jail) already imposed by one of those previous orders is due to be lifted.  *See Hallahan*, 768 F.2d at 755 (denying a motion for leave to appeal where the contemnor did not "appeal from the November 20, 1984 contempt order," but "rather . . . appeal[ed] from the December 17, 1984 order, which set[ ] forth the conditions [the contemnor] must meet to purge himself of the contempt order").  *Cf. Kirkland*, 533 F.3d at 1325 (holding that an order that required a contemnor to repay a sum of money taken from frozen assets in violation of an asset freeze order was not an appealable interlocutory order because it did not impose a penalty or sanction for contempt, but merely required the contemnor to purge himself of contempt by bringing himself into compliance with the court's earlier asset freeze order).

McCallan has not cited controlling authority that would support interlocutory appellate review of an order that, like the February 6, 2018 Order, merely determines that a contemnor has not yet purged himself of a previous contempt finding and instructs the contemnor what remains to be done so that a previously imposed contempt sanction can be lifted.  Several general principles provide useful guidance.

---

[12]  With some exceptions not applicable in this case, appeals from final bankruptcy court orders and motions for leave to appeal interlocutory bankruptcy court orders must be filed "within 14 days after entry of the judgment, order, or decree being appealed."  Fed. R. Bankr. P. 8002(a)(1); Fed. R. Bankr. P. 8003(a)(1); Fed. R. Bankr. P. 8004(a)(1).  McCallan was first found in contempt on October 6, 2016. (Doc. # 7-7.)  In October 2017, he was jailed as a result of his ongoing contempt.  (Doc. # 7-14.)

20

First, in distinguishing whether an interlocutory contempt order falls into the appealable category or the nonappealable category, the Eleventh Circuit has observed that "[t]he key is whether the contempt penalties imposed are conditional or subject to modification," and "[t]he goal is to avoid the risk of disrupting a continuing, orderly course of proceedings below." *Combs*, 785 F.2d at 976 (citation and internal quotation marks omitted).  Second, interlocutory orders that do not impose a penalty or sanction for contempt, but represent "'a continuing effort . . . to prod [the contemnor] into compliance'" have been held not appealable. *Kirkland*, 533 F.3d at 1325 (quoting *Combs*, 785 F.2d at 976).  Third, "[w]here the . . . court [that issued the interlocutory order] is engaged in an 'on-going intervention,' as evidenced by a contempt order that is 'subject to modification,'" appellate review is disfavored because "the effect of intervention by an appellate court would be 'to tie the hands of the . . . court [that issued the interlocutory contempt order], diminish compliance with its orders, and augment [the appellate court's] own workload.'" *Id.* (quoting *Combs*, 785 F.2d at 976).  Fourth, the Eleventh Circuit has held that, for an interlocutory contempt order to be immediately appealable, "[t]here must be both a finding of contempt and a *noncontingent* order of sanction. . . . Only at that point may a contemnor have his appeal." *Combs*, 785 F.2d at 976 (emphasis in original).  Fifth, even when an interlocutory civil contempt order *does* impose a sanction of arrest, the order is generally not appealable when it "does not impose any sanction

21

that cannot be avoided through compliance" with the court's prior orders. *Rintin Corp., S.A. v. Domar, Ltd.*, No. 05-17157 H, 2006 WL 936706, at *1 (11th Cir. Mar. 30, 2006); *see Doyle v. London Guar. & Accident Co.*, 204 U.S. 599, 607-08 (1907) (holding that no right of interlocutory appellate review existed from an interlocutory civil contempt order pursuant to which the contemnor "may suffer imprisonment," but nevertheless "'carrie[d] the keys of the prison in his own pocket' (*Re Nevitt*, 54 C. C. A. 622, 117 Fed. 461), and by compliance with the order of the court, [could] deliver himself from punishment").

In accordance with these general principles, this court is not inclined to grant a motion for permission to appeal where, pending further review and proceedings and as part of an ongoing effort to prod a recalcitrant contemnor into compliance, the bankruptcy court entered an interlocutory order that merely (1) found that the contemnor had not yet purged himself of contempt (as opposed to finding him in contempt in the first place or finding additional acts of contempt), (2) did not impose any new sanctions for contempt (contingent or otherwise), and (3) provided instructions as to what remained to be done to secure the lifting of a previously imposed contempt sanction. *Cf. Hallahan*, 768 F.2d 755 (denying leave to appeal where the contemnor did not timely appeal the original contempt order, but instead sought leave to appeal from a subsequent order that set forth the conditions required to purge the earlier contempt finding).

In undertaking its own jurisdictional research, the court found and considered *Brumfield*, 188 F.3d 303.  In *Brumfield*, the contemnor did not appeal the original order finding contempt and imposing sanctions; rather, the contemnor appealed from the denial of a motion to purge on grounds that, after entry of the original contempt order, the contemnor had taken actions that he contended were sufficient to purge the contempt.  The Fifth Circuit held that the denial of the motion to purge constituted "a new adjudication of contempt and a new sanction, *i.e.*, continued incarceration." *Id.* at 307.   As discussed in Section II.A., *Brumfield* and similar cases will not be applied for three independent reasons: Those cases are not controlling; they are distinguishable; and they were not cited by McCallan, who bears the burden of demonstrating appellate jurisdiction.

*Brumfield* is distinguishable because it concerned whether "one who, subsequent to being jailed for contempt, has taken steps which he contends should purge himself of contempt should be afforded an effective avenue for appeal" from an order denying a motion to purge. *Id.* at 307.  Certainly, it makes sense that a person should not lose the right to appeal his continued confinement simply because he failed to complete additional steps to bring himself into compliance and obtain a ruling on a motion to purge within the fourteen-day window for appealing the original contempt order.

23

However, as discussed in Section II.A., McCallan does not argue that he presented new evidence of compliance or of changed circumstances regarding his ability to comply that were unavailable at the time of the October 2017 orders finding him in contempt and sanctioning him with jail time.  Therefore, the bankruptcy court's February 6, 2018 Order was not, in effect, a new finding of contempt or imposition of a new sanction, but was essentially a continuation of the previous contempt finding and previously imposed sanction.  To hold otherwise would allow McCallan to restart the appeal clock at any point (or multiple points) in the bankruptcy court's ongoing review process merely by filing multiple motions to purge—or by challenging his confinement after every hearing or order in which he is found to still be in contempt—without his having taken additional steps to comply or provide evidence of changed circumstances.

Allowing McCallan to unilaterally restart the appeal clock at any time without taking additional steps to purge or presenting new evidence of an inability to comply would run contrary to all practical considerations, materially disrupt the bankruptcy court's ongoing efforts to secure compliance, waste judicial resources, cause judicial inefficiency and unnecessary piecemeal litigation, and prejudice important interests of the parties (including Appellee's interest in obtaining the required disclosures and McCallan's interest in speedy release from confinement).  Under the circumstances, allowing an appeal would run contrary to the most fundamental considerations

24

relevant to determining whether to allow an appeal from an interlocutory contempt order and/or an interlocutory order of a bankruptcy court. *See Kirkland*, 533 F.3d at 1325 (declining appellate review of a nonfinal contempt order where review would disrupt the continuing efforts of the district court to prod the contemnor into compliance); *In re Martin Bros. Toolmakers, Inc.*, 796 F.2d 1435, 1437 (11th Cir. 1986) (noting that the purpose of the traditional concept of finality is "to avoid waste of judicial resources and the delay inherent in piecemeal litigation," and that the collateral order doctrine so frequently applied to allow flexibility in appellate review in bankruptcy cases is "grounded in the practicalities of the situation" to allow review of "an order resolving issues independent and easily separable from the other claims in the action . . . if delay would prejudice important interests of the parties and if practical rather than technical factors also favor immediate review"); *Ichinose*, 946 F.2d at 1177 (noting that generally, "an immediate appeal must materially advance the ultimate termination of the litigation" to justify granting a motion for leave to appeal under § 158(a)(3)).

McCallan protests that he is being held without any meaningful opportunity to purge himself of contempt (and, by implication, that there is no contingency that he could fulfill to relieve himself of the sanction of imprisonment) because he has already disclosed all documents and information in his possession over the course of this litigation. *See Commodity Futures Trading Comm'n v. Wellington Precious*

*Metals, Inc.*, 950 F.2d 1525, 1530 (11th Cir. 1992) ("[W]hen civil contempt sanctions lose their coercive effect, they become punitive and violate the contemnor's due process rights."). McCallan's argument on this point is without merit.

The February 6, 2018 Order explains what must be done for McCallan to purge himself of contempt. It requires him to file a single, complete set of disclosures in response to discovery requests, file an updated accounting, amend his bankruptcy schedules, and file a notice of compliance. Because the Order requires responses to discovery requests to be "not merely supplements" but "complete in and of themselves, so that a reader of the responses need not look in multiple locations for responsive material," McCallan will be required to resubmit some information he has already submitted (Doc. # 1-1 at 9.) However, requiring a single, complete, up-to-date discovery submission is not the same as requiring McCallan to submit material he does not have or engage in repetitive acts of futility. Because this is a bankruptcy case, the point of the discovery required of McCallan is, among other things, to establish reliable, complete information as to the amount, location, and/or disposition of certain assets. Those assets are (or were) in the custody or control of a person the bankruptcy court has found, on numerous occasions, to have been dishonest and deficient in his disclosures over the course of more than two years since the original finding of contempt, and who at least once fraudulently

26

delayed a production deadline "for the purpose of moving, hiding, or otherwise disposing of assets that could otherwise be used to satisfy the judgment against him in this matter."  (Doc. # 7-8 at ¶¶ 2-3.)

Because of the nature, manner, timing, and volume of McCallan's disclosures to date, and because of his "long history of lying to the Court and flouting its orders" (Doc. # 7-14), a review of the current record to determine precisely the full extent of McCallan's currently outstanding disclosures is, as the bankruptcy court said, "a daunting task."  (Doc. # 1-1 at 9.)  Requiring McCallan to submit complete, up-to-date discovery responses (including material and information already submitted) yields a single, finite, current submission that can be reviewed with maximum efficiency[13] to determine whether the disclosures are accurate, consistent, and complete and whether McCallan has met all his obligations to the court and to the opposing party.  Thus, the order does provide McCallan with an opportunity to purge himself of contempt, even if that opportunity requires resubmission of information and material that he has already produced.

If McCallan takes steps to comply with the February 6, 2018 Order, he will, of course, continue to remain in jail for some reasonable time period necessary for

---

[13] Promoting judicial efficiency is in McCallan's interest.  The more efficiently the bankruptcy court can determine whether he has finally purged himself of contempt, the faster the jail doors may open.

27

the bankruptcy court to review the record, possibly hold further hearings, and confirm whether contempt has been purged.  McCallan takes issue with the bankruptcy court's chosen method for review and confirmation, which allows the opposing party thirty days to determine whether she has objections to McCallan's submission before the court decides whether to schedule another hearing.  McCallan argues that the February 6, 2018 Order places the keys to the jail in Appellee's pocket, thereby subjecting him to imprisonment for some time period (not to exceed 30 days) in which he cannot take further action to purge himself of contempt.[14]

McCallan's argument does not support granting the motion for leave to appeal at this time.  It remains to be seen whether McCallan will, in fact, trigger Appellee's review period by first complying with the February 6, 2018 Order and filing a certification of compliance.  Reviewing the issue now will not materially advance the ultimate resolution of the contempt proceedings and may well hinder them with unnecessary interference in the bankruptcy court's ongoing intervention to secure

---

[14] As a practical matter, judicial efficiency is the second most important factor in setting the speed at which the doors to McCallan's cell can be opened.  The most important factor, of course, is the pace of McCallan's own efforts to purge himself of contempt.  The court makes no finding as to the merits of the bankruptcy court's approach or as to whether the bankruptcy court's February 6, 2018 Order could reasonably be construed as placing the keys to the jail in Appellee's hands.  The February 6, 2018 Order could also be construed as streamlining the remaining review process by designing an efficient method to identify what, if any, disclosures remain outstanding, and by limiting the scope of further hearings solely to those items the parties intend to dispute.  The alternative (for the bankruptcy court itself to review and assess every single item in every single disclosure for veracity and completeness) would be highly inefficient and may result in unnecessary delay from hearings, briefs, or other proceedings on matters that turn out not to be in dispute.

28

McCallan's compliance and to determine the full extent to which McCallan's submissions are deficient.  *See Kirkland*, 533 F.3d at 1325 (holding that, where a remedial monetary sanction was intended to allow the contemnor to purge himself of his contemptuous conduct and comply with the court's asset freeze order, "'[a]ppellate review . . . would be disruptive of what [is] obviously a continuing effort on the part of the district court to prod [the contemnor] into compliance.'" (quoting *Combs*, 785 F.2d at 976)); *Ichinose*, 946 F.2d at 1177 (noting that, in general, considerations guiding the court's discretion on a motion for leave to appeal from an interlocutory bankruptcy court order include the requirement that "an immediate appeal must materially advance the ultimate termination of the litigation").

In the event that McCallan does eventually trigger Appellee's review period, an appeal or motion for leave to appeal the February 6, 2018 Order itself may not be timely, but other remedies would be available, such as a motion for appropriate relief from the bankruptcy court (*e.g.*, a motion for release on bond or a new motion to purge contempt based on additional disclosures made in compliance with the February 6, 2018 Order, which might start a new time clock for appeal) or writs of habeas corpus or mandamus.  *See* 28 U.S.C. § 2241(a), (c)(2)-(3) (providing habeas relief for a person who is "in custody for an act done or omitted in pursuance of . . . an order, process, judgment or decree of a court or judge of the United States," or

29

who is "in custody in violation of the Constitution or laws or treaties of the United States"); *Hallahan*, 768 F.2d at 755 ("In the instant case, appellant does have an alternative means for obtaining review of the propriety of his continued incarceration for contempt even though he failed to timely appeal the contempt order. One of the avenues open to him is a petition for review pursuant to 28 U.S.C. § 2255, statutory federal habeas corpus relief.").

Therefore, the court declines to exercise its discretion to grant the motion for leave to appeal. *Cf. Hallahan*, 768 F.2d at 755 (declining to grant a motion for leave to appeal where the order that was the subject of the appeal merely "set[ ] forth the conditions [the contemnor] must meet to purge himself of a [previous] contempt order").

## III.   CONCLUSION

Accordingly, it is ORDERED as follows:

1.   Appellant Timothy McCallan's amended motion (Doc. # 1-1) for leave to file an interlocutory appeal is DENIED.

2.   McCallan's Emergency Motion (Doc. # 2) to expedite the appeal pursuant to Rule 8003(a)(2)(B) of the Federal Rules of Bankruptcy Procedure is DENIED as moot.

3.   Appellee Carly B. Wilkins's motion (Doc. # 3) to dismiss for lack of jurisdiction is GRANTED.

4.    Appellee's motion (Doc. # 5) to strike the motion for leave to expedite the appeal is DENIED as moot.

5.    Appellee's motion to strike McCallan's brief in support of the appeal (Doc. # 14) is DENIED as moot

6.    The appeal is DISMISSED.

Final judgment will be entered separately.

DONE this 19th day of March, 2018.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE