UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF ALABAMA

IN RE:

ALLEGRO LAW, LLC,                         Case No. 10-30631-WRS
                                                        Chapter 7
     Debtor.

CARLY WILKINS, as Trustee for
Debtors Allegro Law, LLC and
Allegro Financial Services, LLC

     Plaintiff,

vs.                                                     Adv. No. 11-03007

TIMOTHY MCCALLAN, ET AL

     Defendants.

## MOTION TO DETERMINE COMPLIANCE WITH THE CIVIL CONTEMPT ORDERS AND FOR THE IMMEDIATE RELEASE OF

## DEFENDANT MCCALLAN FROM INCARCERATION

COMES NOW the Defendant Tim McCallan ("McCallan"), by and through the undersigned Counsel and moves for an order determining that Defendant McCallan satisfied the purge requirements as provided for within the various Orders of this Court. Further, Defendant moves for an order granting his immediate release from incarceration. In support, Defendant McCallan would aver:

1. A hallmark of civil contempt is the contemnor's ability to "purge the contempt and obtain his release by committing an affirmative act," thus "carr[ying] the keys of his prison in his own pocket." *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994).

2. A sanction is "punitive and criminal if it is imposed retrospectively for a completed act of disobedience, such as the contemnor cannot avoid or abbreviate the confinement through later compliance." *Bagwell* at 828-29.

3. "A troublesome aspect of a trial court's power to impose sanctions, either as a result of a finding of contempt, pursuant to the court's inherent power, or under a variety of rules … is that the trial court may act as accuser, fact finder, and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed." *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998).

4. "The absence of limitations and procedures can lead to unfairness or abuse" and "[f]or that reason, appellate courts have ruled that, in certain sanctions proceedings, the person facing imposition of sanctions should have the benefit of the procedural protections available to a person charged with a crime" including "the right to a public trial … presumption of innocence … and the requirement of proof beyond a reasonable doubt." *Id*.

5. "[W]hen civil contempt sanctions lose their coercive effect, they become punitive and violate the contemner's due process rights." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1530 (11th Cir.1992).

6. It is within this Court's inherent authority to enforce its own orders. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-31 (1962) (holding that judicial power to dismiss arises from court's inherent authority to enforce its orders); see also *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999) (recognizing that court has broad authority under Rule 37 to control discovery and enforce its orders).

7. The February 6, 2018 Order of this Court was clear as to the requirements for Defendant McCallan to purge his contempt. Defendant was required to demonstrate that he had purged himself of contempt by complying with the following conditions: (1) he must provide updated responses to specifically enumerated discovery requests, including two sets of interrogatories and three sets of requests for production; (2) he must file an updated accounting for the $498,000 that was in the Wells Fargo account; (3) he must amend his bankruptcy schedules and statement of financial affairs in bankruptcy case number 17-30961; and (4) he must file a certification that he has complied with the February 6, 2018 Order. (Doc. 629, pp. 2-3). This Court further ordered that "[w]ithin thirty days after the date of McCallan's certification, Wilkins (Trustee) shall file a response as to whether she agrees that McCallan's responses are complete." (Doc. 629, p. 3). Defendant McCallan filed a sworn affidavit and certification that he has complied with the February 6, 2018 Order. (Doc. 699). Included within that certification, Defendant stated that he had filed an

updated accounting for the $498,000 that was in the Wells Fargo account, and had amended his bankruptcy schedules and statement of financial affairs in bankruptcy case number 17-30961. Defendant also stated that he had fully complied with the required discovery production. The Trustee did not agree that McCallan had fully complied.

8. It is uncontested that Defendant's discovery responses pursuant to the February 6, 2018 Order were complete. Judge Sawyer acknowledged that fact within his oral pronouncement on May 25, 2018 by stating "I want to make clear that – and Mr. McCallan with Ms. Eckstein's help did, in fact, file a complete set of responses, answers to interrogatories, requests for production of documents. We've got the document. We've looked at them. We went through them in some detail. And after a couple of hours or so, I stopped Mr. Widerman and said, okay, I get it, you filed complete responses. If I was – I think if anybody was simply looking at the interrogatories and the responses, they'd say, yes, these are full, complete responses to what's asked. (Hr'g TR, 216-17:22-25/ 1-6, May 25, 2018) However, despite filing complete responses to the documents required to purge his contempt, Defendant McCallan is still in jail for the same continued contempt.

9. In order for civil contempt to remain civil and coercive, the contemnor must have the ability to purge the contempt. Although this Court used the magic "keys to his jail cell" words within its October 24, 2017 order of incarceration, it ultimately did not honor those words by releasing Defendant from incarceration when the undisputed evidence before this Court, and acknowledged by Judge Sawyer himself, showed that Defendant McCallan had satisfied the purge requirements of the February 6, 2018 Order. Defendant McCallan

respectfully asks this Court to decree that the purge requirements contained within this Court's February 6, 2018 order have been satisfied by Defendant. Based upon this purge satisfaction, Defendant McCallan respectfully asks this Court to grant his immediate release from incarceration.

10. Over the course of various post-judgment hearings the Trustee has made allegations that 1) McCallan has secreted an estimated $16 million, 2) that once the Trustee obtained all the backup information, the actual amount secreted would be higher than the $16 million, 3) McCallan may have funneled the funds through his companies to hide it. McCallan denies these allegations and is attempting to prove them incorrect.

11. To further his assertions, the McCallan team requested the servers that were confiscated by the Trustee prior to the Judgment. The Trustee sent copies the servers to the Fritz Law Firm around September 7, 2018. They were then shipped to Melbourne, Florida to be examined by a computer programmer.

12. It was determined that a cloud hosting data company, Creative Networks Innovations, Inc. (CNI) held all backup storage of all of McCallan's company servers. CNI would not release the information voluntarily. On September 25, 2018 McCallan subpoenaed the information held by CNI. That information was provided to McCallan about October 19, 2018.

13. Around October 23, 2018, the McCallan computer expert was able to access the data held by CNI through an accounting software MAS 200. When McCallan's team had the copy of

the servers, the CNI information and MAS 200 software they were able to review every posted transaction from the McCallan controlled companies and his personal check register.

14. All of the information used in the MAS 200 was in the possession of the Trustee or CNI. The information was not in the care, custody or control of McCallan until they responded to the subpoena. The Trustee was aware that CNI had previously held such data. McCallan never hid that fact.

15. On December 4, 2018 Lucy Tuft acknowledged receipt of the hard drive that contained the MAS 200 data. Also, on December 4, 2018 the undersigned emailed detailed instructions on how to open and use MAS 200.

16. McCallan believes that the newly discovered corporate accounting records that include General Ledgers, Balance Sheets, Income Statements and Check Registers of all McCallan controlled entities. This information will explain where and when all of the monies were disbursed after they left McCallan's personal control.

17. McCallan believes the information in MAS 200 will reveal that any money transferred to the companies were used for legitimate business expenses of those companies and that it will also confirm that the money was not secreted by McCallan.

**WHEREFORE**, Defendant McCallan respectfully requests an order determining that Defendant McCallan satisfied the purge conditions as dictated within Order of this Court. Further, Defendant respectfully requests an order granting his immediate release from incarceration, or in the alternative, to be released under Court ordered house arrest.

Respectfully submitted by,

*/s/ Michael A. Fritz, Sr.*

Michael A. Fritz, Sr.

**OF COUNSEL**:
Fritz Law Firm, LLC
25 South Court Street
Suite 200
Montgomery, AL 36104
334-230-9790
334-230-9789 (fax)
Attorney for Defendant Timothy McCallan

## CERTIFICATE OF SERVICE

I hereby certify that on this the 4th day of January, 2019, I served the foregoing by email and/or US Mail, postage pre-paid to the following:

STEVE OLEN
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, AL 36604
*sco@cunninghambounds.com*

LUCY E. TUFTS
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, AL 36604
*let@cunninghambounds.com*

Carly Wilkins, Chapter 7 Trustee
560 S McDonough St, Ste. A
Montgomery, AL 36104

*cwilkins@hammwilkins.com*

                                                        /s/ Michael A. Fritz, Sr.
                                                       Michael A. Fritz, Sr.