## UNITED STATES BANKRUPTCY COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA

IN RE:

ALLEGRO LAW, LLC,                                    Case No. 10-30631-WRS
                                                     Chapter 7
     Debtor.

CARLY WILKINS, as Trustee for
Debtors Allegro Law, LLC and
Allegro Financial Services, LLC

     Plaintiff,

vs.                                                  Adv. No. 11-03007

TIMOTHY MCCALLAN, et al.

     Defendants.

## DEFENDANT, TIMOTHY MCCALLAN'S
## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### INTRODUCTION

The Evidence now shows that Timothy McCallan has purged himself of contempt and should be released immediately. Holding him any longer would be punitive. The Trustee sought to imply that McCallan MUST have hidden documents and assets. The Trustee shows no evidence of hidden documents or assets. Mr. McCallan was left to prove that these did NOT exist. It became impossible for Mr. McCallan to prove a negative.

### PROPOSED FINDING OF FACTS

Timothy McCallan ("Mr. McCallan") was incarcerated on October 23, 2017 for contempt of court stemming from post-judgment discovery requests. Since his incarceration, his wife, Mrs. McCallan and her team have done everything humanly possible to answer every question asked about every aspect of the case. Mrs. McCallan and Kellie Eckstein, a bookkeeper by trade, have

1

provided this Court with documents, data and spreadsheets to show that Mr. McCallan does not have any unrevealed documents or undisclosed assets. This Court finds that the Trustee's red herrings and assumptions are unfounded. The Court makes the following findings of facts:

**A. MAS200 ACCOUNTING RECORDS AND PRODUCTION:** On December 4, 2018 McCallan has produced the accounting software program, MAS200. It details the financial accounting transactions for all of McCallan's businesses and some personal accounts. It is important to layout the timeline of events, problems, mishaps and then finally good fortune that lead to the submission of the most vital information that proves where McCallan's money came from and ultimately where it went.

♦ 2013 the Trustee sends their own representative (Mr. Middleton) to CNI, a data storage company that was hired by McCallan to store the records for all of his companies. The Trustee was provided a list by McCallan of the servers and names of the files that they need to copy so that they have all the information they need. This was confirmed by Mr. Middleton's testimony on May 7, 2019, Transcript page 38, Line 20.

```
20   A    Well, like I said, they were included in the list, and so
```

♦ Unfortunately, Mr. Middleton did not copy NYFSI and NYMAS provided by McCallan and page 38, lines 1 and 2 he believed those systems did not exist anymore.

```
                                Middleton - Direct                    38
1   assumed that those systems were not -- that they didn't exist
2   anymore.
```

♦ On May 7, 2019 transcript on page 40, line 5-14, Ms. Tuff proves that since December 18, 2018, had in their possession the three new servers that contain and data relevant to

2

Allegro Law, LLC and the underlying ligation and Middleton answers Yes:

```
5    Q     Did the three new servers that were produced from the
6    first time -- for the first time December 2018 contain any data
7    relevant to Allegro Law, LLC and the underlying litigation,
8    which we were repeatedly assured the trustee had been given?
9    A     Yes.  I mean, with the sheer quantity, the volume of
10   documents, we obviously haven't had time to go through all of
11   that information.  But I believe it's Ms. Eckstein yesterday
12   had testified and Mr. McCallan had included in his exhibit list
13   that NYMAS contained detailed general ledgers, balance sheets,
14   income statements, et cetera, for Allegro Law.
```

- The Trustee never informs McCallan that MAS200 and the other 3 servers were not copied.

- McCallan believes the Trustee has all of the data that McCallan had in his possession.

- McCallan continues using MAS200 for two additional years.  During this time McCallan is shutting down operation of his businesses.   He runs out of money to pay CNI for storage and since the companies had been closed, he stopped doing business with them.

- McCallan needs accounting information to answer the Post Judgment Discovery and he attempted to obtain copies of the servers & MAS200 from CNI to no avail.

- McCallan is held in contempt and Ms. Eckstein tries to help answer the Post Judgment Discovery and seeks to find a copy of MAS200.  She is familiar with MAS200 because she assisted McCallan with a project years ago.  Ms. Eckstein also attempted to obtain records from CNI but was told "the court came and took everything, nothing is here".

3

- In the constant search for information, Ms. Eckstein found a file called "MAS200 backup". She was unable to open the files and enlisted assistance from the manufacturer of MAS200, SAGE, they informed her the files are not viewable and nothing would be able to be recovered from the backup.

- McCallan request that the Trustee send him what they cloned in 2013. Upon receipt of these files from the Trustee, McCallan discovers that the Trustee did not have all of the MAS200 files either. The MAS200 general ledgers from every company would clear up any question about all transaction.

- Mrs. McCallan questions CNI once again about missing files and the owner of CNI admits that he has a backup copy but she must pay him $36,000.00 for the remaining time of the contract that Mr. McCallan failed to pay in order to obtain the remaining files With a threat of subpoena, CNI finally released the information.

- While downloading these reports, the servers failed and Mrs. McCallan had to borrow money to buy new equipment in order to produce a copy for the Trustee.

- Ms. Eckstein wrote an instructional manual, a step by step guide on how to run reports and access all files in the program in addition to giving the Trustee copies of the reports.

- As of December 4, 2018, the Trustee has received all of McCallan's financial accounting records they have been requesting.

We believe that every document requested by the Trustee has been submitted, therefore he should be released from contempt.


**B. NO FOREIGN BANK ACCOUNTS**: There is an assumption by the Trustee that McCallan has overseas bank accounts. The Trustee has not provided any conclusive evidence that such

4

accounts exist. The Trustee has continually asked that McCallan to prove that no such bank accounts exist, i.e. to "prove a negative". The Trustee produced one bank statement, Trustee's exhibit TX452B, as seen below, purports that Mr. McCallan received money wired to him from a HypoSwiss Bank & Zurich. First, the account belongs to Intermark, a McCallan owned company, and it is a corporate line of credit. Second, the money that was wired into said account was Intermark's Operating account at Signature Bank. This bank is based in New York and used US dollars to make the payment. It was not a bank in Switzerland as the Trustee would like the Court to believe. McCallan provided a copy of the original wire transfer instructions as well as a copy of the Signature bank statement showing where the money originated. The truth becomes clear when viewing the transactions on the statements side by side. They show the same date, same amounts and same bank account numbers. On the wire transfer instructions Mrs. McCallan has highlighted the same bank account number, same date, same amounts that the currency is US, (United States Dollars), the country code : US, the sender is Signature Bank, the beneficiary is Merrill Lynch. The evidence presented has completely ruled out the possibility of this being money moved from a foreign account. Further, the Trustee was not able to produce one general ledger entry for a foreign bank account. The Trustee has not been able to deliver any other evidence of foreign bank accounts because they simply do not exist.

INTERMARK COMMUNICATIONS INC.　　　　　Account Number787-07B20　　　　24-Hour Assistance(866) 4MLBUSINESS
Access Code: 92-787-07220

## YOUR WCMA TRANSACTIONS

### DIVIDENDS/INTEREST INCOME TRANSACTIONS

| Date | Transaction Type | Quantity | Description | | Income | Income Year To Date |
|------|------------------|----------|-------------|--|--------|---------------------|
| | Subtotal (Taxable Dividends) | | | | | 34.77 |
| | **NET TOTAL** | | | | | **34.77** |

**Originating bank account # from Signature Bank in NY See Wire Transfer Instructions**

### CASH/OTHER TRANSACTIONS

| Date | Transaction Type | Quantity | Description | Debit | Credit |
|------|------------------|----------|-------------|-------|--------|
| 05/04 | Wire Transfer | | WIRE TRF OUTP30912408311 | 300,000.00 | |
| 05/06 | Wire Transfer | | WIRE TRF OUTP30912607491 | 300,000.00 | |
| 05/06 | Wire Transfer | | WIRE TRF OUTP30912609261 | 450,000.00 | |
| 05/08 | Wire Transfer **Most wires appear this way** | | WIRE TRF IN D30912807604 ORG=/1501051140 INTERMAR | | 275,000.00 |
| 05/08 | Wire Transfer **This wire had additional info added** | | WIRE TRF IN D30912807607 ORG=/1501051140 INTERMAR SHHBCHZZ <FPS GENERATED ZZ:HYPOSWISS PRIVATBANK | | 300,000.00 |
| 05/08 | Wire Transfer | | WIRE TRF IN D30912807611 ORG=/1501051140 INTERMAR EFGBCHZZ <FPS GENERATED ZZ:EFG BANK-ZURICH > | | 25,000.00 |
| 05/11 | Wire Transfer | | WIRE TRF OUTP30913109376 | 1,000,000.00 | |
| 05/13 | Wire Transfer | | WIRE TRF OUTP30913308057 | 799,000.00 | |
| 05/15 | Wire Transfer | | WIRE TRF IN D30913508553 ORG=/1501051140 INTERMAR /40686799 BACARDI LIMITE A JOHNSONPO BOX HM 720 /16214U50 ANNETTE S. AS EVOCABLETRUST | | 300,000.00 |
| 05/15 | Wire Transfer | | WIRE TRF IN D30913508592 ORG=/1501051140 INTERMAR | | 299,000.00 |

+

ACCOUNT NUMBER:787-07B20

Confidential　　　　　　　　　　　　　　　　　　　　　　　　　　　　MLPF&S McCallan000527

Case 11-03007　Doc 807　Filed 06/07/19　Entered 06/07/19 18:07:50　Desc Main Document　Page 6 of 54

**These are the wire transfers from Signature bank that went directly to Merrill Lynch to pay IMM line of credit.**



Statement Period
From May 01, 2009
To May 31, 2009
Page 17 of 48

PRIVATE CLIENT GROUP 021
279 SUNRISE HIGHWAY
ROCKVILLE CENTRE, NY 11570
LUCY IANNUCCI
(516) 408-5050

INTERMARK COMMUNICATIONS INC.
D/B/A COPEAC OPERATING ACCOUNT
C/O AMERICORP INC.
311 CROSSWAYS PARK DRIVE
WOODBURY NY 11797

2-021

See Back for Important Information

G

Primary Account: 1501051140    401

| Date | Description | | |
|------|-------------|---|---|
| May 06 | OUTGOING WIRE TRANSFER | | 300,000.00 |
| | REF# 200905068GB7261F000388 | | |
| | TO: e Cruz LLC | ABA: 322271627 | |
| | BANK: WASHINGTON MUTUAL | ACCT# 3113208173 | |
| May 07 | OUTGOING WIRE TRANSFER | | 15,000.00 |
| | REF# 200905078GB7261F000021 | | |
| | TO: Debt.com | ABA: 026009593 | |
| | BANK: BANK OF AMERICA, N | ACCT# 1101269148 | |
| May 07 | AUTOMATED PAYMENT    ck/ref no. | 8028991 | 94,822.11 |
| | ADVANTAGE BUSINE    PAYROLL | 009407677 | |
| May 08 | OUTGOING WIRE TRANSFER | | 25,000.00 |
| | REF# 200905088GB7261F000442 | | |
| | TO: Merrill Lynch | ABA: 043000261 | |
| | BANK: MELLON BANK, N. A. | ACCT# 1011730 | |
| May 08 | OUTGOING WIRE TRANSFER | | 275,000.00 |
| | REF# 200905088GB7261F000440 | | |
| | TO: Merrill Lynch | ABA: 043000261 | |
| | BANK: MELLON BANK, N. A. | ACCT# 1011730 | |
| May 08 | OUTGOING WIRE TRANSFER | | 300,000.00 |
| | REF# 200905088GB7261F000441 | | |
| | TO: Merrill Lynch | ABA: 043000261 | |
| | BANK: MELLON BANK, N. A. | ACCT# 1011730 | |
| May 11 | OUTGOING WIRE TRANSFER | | 24,807.00 |
| | REF# 200905118GB7261F000357 | | |
| | TO: MY Publishing | ABA: MIZBILITX | |
| | BANK: UNITED MIZRAHI BANK LTD | ACCT# 488780 | |
| May 11 | OUTGOING WIRE TRANSFER | | 32,226.60 |
| | REF# 200905118GB7261F000392 | | |
| | TO: e Cruz LLC | ABA: 322271627 | |
| | BANK: WASHINGTON MUTUAL | ACCT# 3113208173 | |
| May 11 | OUTGOING WIRE TRANSFER | | 93,500.40 |
| | REF# 200905118GB7261F000370 | | |
| | TO: APSTUDIOS | ABA: 121000248 | |
| | BANK: WELLS FARGO BANK, | ACCT# 1482585684 | |
| May 11 | OUTGOING WIRE TRANSFER | | 103,618.00 |
| | REF# 200905118GB7261F000462 | | |
| | TO: Media Force Ltd. | ABA: MIZBILITX | |
| | BANK: UNITED MIZRAHI BANK LTD | ACCT# 20411170409 | |
| May 11 | OUTGOING WIRE TRANSFER | | 121,232.00 |

# This is the original wire instrustions.



**Outgoing FED Message**

Requested By:

Printed: 12/5/2018  3:07:16PM

VERSION:      0

### MESSAGE INFORMATION

| | | | |
|---|---|---|---|
| Amount: | $300,000.00 | Message ID: | 090508144443H101 | PDM: |
| Currency: | USD | Latest Version: | 0 | Priority: M |
| Value Date: | 05/08/2009 | Time: | 14:45:40 | URC: |
| Bank ID: | 075 | Department: | WIR | Status: COMPLETE |
| Message Type: | 10 | Branch: | 075BR001 | Template: |
| Message Subtype: | 00 | Charge: | | Purpose of wire: |
| Fee: | 0.00 | Source: | CSH | |
| Ref. No.: | 090508144443H101 | External Ref.: | SIGNY1280629 | Country Code : US |

### MESSAGE TEXT

Ref. No.: 090508144443H101

Sender ABA: 028013576   Sender Name: SIGNATURE BANK   Prod. Code: CTR

Receiver ABA: 043000261   Receiver Name: MELLON BANK, N. A.   Local Instrument Code:

Ref. IMAD:

IMAD:  20090508B6B7261F000441   Prop. Code:   Ref. for Bnf.:

OMAD:  20090508B1B7TQ1C00331005081445FT01

As of Reason:   As of Date:   Disposition:

Acc Off:  075   Account:  1501051140   Acc. Type: DDA   Initiator ID:

Cr Acc Off:   Cr Acc No:   Cr Acc Type:

Db Advice:   Db Fee:   Cr Advice:   Cr Fee:

Drawdown Credit Account:

Originator:   Originator Option F:   Beneficiary:

1501051140                                1011730

INTERMARK COMMUNICATIONS INC.   Merrill Lynch

C/O AMERICORP INC.

311 CROSSWAYS PARK DRIVE

WOODBURY NY 11797

Originator Bank:                          Beneficiary Bank:

Page 1

This is the original wire instructions for Intermark payments to Merrill Lynch line of credit.  As you can see in the country code, it's the US and not international.  There was not out of the international wires only domestic.

8

**C: NO COMPANY OWNED IN IRELAND (UK)**:  The Trustee implies that McCallan might

own a company in Ireland, that he may have funneled money through.  They produced an email

they submitted as Trustee's Exhibit TX647.  The email was a discussion about POSSIBLY doing

business in the UK.  The Trustee attempted to make the argument even more convincing when

they showed the Court a stamp on McCallan's passport of him entering Dublin.

The email was dated July 19, 2006 and the date McCallan went to Ireland on July 26, 2012.  A

full 6 years later!



The Trustee has access to all of McCallan's emails and there is no evidence that an

overseas company actually exists.  There is no evidence presented to show that McCallan opened

bank accounts, no corporate documents, no phone records, no corporate minutes and especially

no accounting records.  Over a six-year time span there would have been credit card transactions,

emails, something else, anything else, especially wire transfers to or from personal or other corporate accounts because that was the natural course of business for him. The Trustee did not present any bank statements either personal or corporate that show money ever going to any such business. Ms. Eckstein has accounted for every withdrawal from McCallan's personal accounts. There are no entries that can be found to fund this assumed new business venture. McCallan produced an accounting software system, MAS200. MAS200 has recorded all transactions in McCallan's corporate accounts and no entries can be found that indicate an investment being made into an overseas corporation, thus virtually making it impossible for a new business venture to be funded. The Trustee has not provided any other evidence showing a company was ever opened or operated which is evidence that no such company exists.

**D. PASSWORDS:** At the last hearing, the Trustee asked for passwords to open two spreadsheets. The Trustee implied that McCallan had hidden the passwords in a purposeful manner to thwart the Trustee from finding hidden money. After the hearing, Ms. Eckstein found the file in question on the computer that the Trustee had cloned. Mp40 Money Tree was an attachment to an email between McCallan and his accountant. There was an additional email that was sent just minutes before which provided the accountant with the password to open the file. The copy of this email (which they already had in their files) was immediately sent to the Trustee. The spreadsheet in question was a detailed accounting of the transactions in the Brokerage account that McCallan and his brother Peter were trading in. This file now clears up all questions related to the Interactive Broker account and helps prove McCallan's position. It wasn't until after the hearing that the Trustee finally admitted to having access.

Case 11-03007    Doc 807    Filed 06/07/19    Entered 06/07/19 18:07:50    Desc Main
Document      Page 10 of 54

**E.  ACTUAL CASH ON HAND REPORTED TO THE TRUSTEE:**  Ms. Eckstein created a spreadsheet detailing cash on hand.  This was done to explain what McCallan did with all the money he had put in his safe or other hiding places in the house.  Every transaction she could find relating to cash was logged here.  Each cash withdrawal from bank accounts, whether personal or corporate, were logged in according to date and indicated where the money came from.  Every time there was evidence of using cash it was logged in and she provided a column for the running balance.  At the end of her 11year analysis she showed a balance of $186,904.69 that she did not have receipts for spending.

At the May 7, 2019 hearing, Ms. Eckstein did make some speculation about what could have happened to the rest of the cash.   She speculated that it would be possible, that McCallan could have spent $15,000.00 per year for 12 years, totaling approximately $180,000.00 on various things like, birthday parties, travel, meals, entertainment, Christmas gifts, etc. without records or copies of receipt. Mr. Carol agreed that this could be possible.  Therefore, there is no proof that McCallan was not honest in his Bankruptcy Petition.


**F.  METALS:**  The Trustee implies that McCallan is hiding coins.  Using documents submitted by McCallan, the Trustee presents a few occasions of metals being purchased directly from companies owned by McCallan.  They imply that he did this solely to hide the fact they he bought it.  The Trustees assertion was not backed up by any evidence.  Again, the Trustee wants McCallan to prove a negative.  Evidence of McCallan disclosing all information relating to metals and proving their implication as false are as follows:

- ◆ McCallan provided invoices and records of all purchases and sales to show he isn't hiding anything.

11

- Metals purchased with corporate funds were posted to distributions, thus resulting in a taxable event. McCallan paid taxes on this money and therefore it cannot be hidden from the IRS, nor from his records.

- On one occasion a bookkeeper made a mistake by posting the purchase from Madaloni for $10,000 worth of metals to Professional Services. At the end of the year the error was found and it was corrected and reclassed to distributions. During these hearings Mr. Olen has presented this particular transaction twice when in fact it was only an error that was corrected in the same year that it was made. During testimony on May 6th, 2019, Mr. Olen, for the second time, mentions this transaction as seen on the Transcript page 213 Lines 2 through 18:

```
                        Eckstein - Cross                    213
 1  A      That was -- that's what would be on my sheet.
 2  Q      Well, let me -- let me remind you just of another
 3  occasion.  Do you remember that we had testimony about how
 4  Intermark bought some coins for Mr. McCallan, and on
 5  Intermark's records, they showed that as professional fees, the
 6  money paid to buy those coins?  Do you remember that?
 7  A      Yes, sir.
 8  Q      You never would have caught that one, would you, if we
 9  hadn't caught it?
10  A      I found it.
11  Q      You found it?
12  A      I was the one who told you about it.
13  Q      All right.  But that wasn't treated as -- as a
14  distribution, was it?
15  A      Yes, it was.  It was corrected at the end of the year.
16  Q      According to you?
17  A      According to the general ledger from the accounting
18  records.
```

12

- It is logical that if the purchase was meant to be hidden a person would not draw attention to it by making a re-classification entry in their books. It would appear that if McCallan wanted to keep this transaction hidden he would not be paying taxes on it and Ms. Eckstein would not have used the documents showing the reclassification as evidence that the purchase was ever made.

- Mr. Carol created the spreadsheet TX19 which was his attempt to reconcile all the metals that were purchased and sold. Since he could not complete the reconciliation, he concluded that McCallan must be hiding more metals. In response to Mr. Carol conclusion, the McCallan team created the spreadsheet entitled Metals TX19 to rebut as seen below.

- An email from Chris McCallan explained he sold $50,000 worth of metals to Mr. McCallan and paid with cash. Ms. Eckstein created a spreadsheet detailing all of the metals purchased and sold. See the spreadsheet in Appendix A. Ms. Eckstein provided all dates, location and file names of the evidence found to support her entry. The schedule includes where the money came from to make the purchase, where the money went once the metals were sold, the name and type of metal purchased and sold, the quantity, the units cost, total cost, and ultimately the sales total. At the bottom it indicates the total money spent on purchases to be $1,451,406.72. McCallan's total sales amount of $1,935,489.72, thus revealing that McCallan made a profit of $483,771.02 which was accounted for in the May version of TX257 on the deposits, withdrawal & expenses and cash on hand tabs.

13

| Purchase date | Evidence file name | From | Name | Qty | Unit Price | Cost Total | Money Came From |
|---|---|---|---|---|---|---|---|
| 1/1/10 | CostvsSalebasisGoldTimMcCallan2012TaxesCapitalGain | cash | Johnson Matthey Gold Bars 32.15 oz | 3 | $43,974.77 | $131,924.31 | Cash |
| 1/30/09 | Inv_22634_from_Southland_Coins_and_Collectibles_Inc._6624 | Southland Coins | Silver Eagles Coins 2009 | 9200 | $16.42 | $151,064.00 | ML x10608 |
| 11/1/10 | Inv_26297_from_Southland_Coins_and_Collectibles_Inc._6624 | Southland Coins | Silver Eagles Coins | 1000 | $27.05 | $27,050.00 | Intermark |
| 8/19/11 | TimChrisTransaction. | Chris McCallan | Silver Eagles | 825 | $43.60 | $35,970.00 | CASH |
| 6/8/07 | TM14506-14524;Metals (page 1).pdf | Blanchard Gold | Gold American Eagle 1 oz | 14 | $705.52 | $9,877.28 | ML x10608 |
| 4/28/08 | Inv_21239_from_Southland_Coins_and_Collectibles_Inc._6624. & Seton GL 2008 (page 315-319).pdf | Southland Coins | Gold Canadian Maple Leaf 1 oz | 10 | $923.00 | $9,230.00 | Seton |
| 5/19/08 | Inv_21348_from_Southland_Coins_and_Collectibles_Inc._6624 | Southland Coins | Gold Canadian Maple Leaf 1 oz | 107 | $938.00 | $100,366.00 | ML x10608 |
| 6/13/08 | Inv_21472_from_Southland_Coins_and_Collectibles_Inc._6624. &. Seton GL 2008 (page 315-319).pdf | Southland Coins | Gold Canadian Maple Leaf 1 oz | 112 | $893.00 | $100,016.00 | Seton |
| 1/30/09 | | Southland Coins | Silver Eagles Coins 2009 | | | | |
| 6/8/07 | TM14506-14524;Metals (page 1).pdf | Blanchard Gold | Gold American Buffalo Coin | 14 | $705.52 | $9,877.28 | ML x10608 |
| 10/31/07 | TM14506-14524;Metals (page 2) | California Numis. Inv. | Platinum Eagle 1 oz APUS | 3 | $1,464.00 | $4,392.00 | BOA x7480 |
| 10/31/07 | TM14506-14524;Metals (page 2) | California Numis. Inv. | Palladium APAML | 15 | $395.00 | $5,925.00 | BOA x7480 |
| 10/31/07 | TM14506-14524;Metals (page 2) | California Numis. Inv. | Gold Eagle 1/2 oz | 20 | $408.00 | $8,160.00 | BOA x7480 |
| 10/31/07 | TM14506-14524;Metals (page 2) | California Numis. Inv. | Gold American Eagle 1 oz | 10 | $819.00 | $8,190.00 | BOA x7480 |
| 10/31/07 | TM14506-14524;Metals (page 2) | California Numis. Inv. | Gold American Buffalo 1 oz AUBU | 10 | $819.00 | $8,190.00 | BOA x7480 |
| 1/1/09 | CostvsSalebasisGoldTimMcCallan2012TaxesCapitalGain | | Pamp Suisse Bars 10 oz | 6 | $15,280.00 | $91,680.00 | Cash |
| 1/30/09 | Inv_22635_from_Southland_Coins_and_Collectibles_Inc._6624 | Southland Coins | Gold Canadian Maple Leaf 1 oz | 103 | $974.75 | $100,399.25 | ML x10608 |
| 12/1/09 | Inv_24346_from_Southland_Coins_and_Collectibles_Inc._6624 | Southland Coins | Gold Canadian Maple Leaf 1 oz | 118 | $1,276.00 | $150,568.00 | ML x10479 |
| 7/16/10 | Inv_25622_from_Southland_Coins_and_Collectibles_Inc._6624 | Southland Coins | Gold Canadian Maple Leaf 1 oz | 40 | $1,235.80 | $49,432.00 | Credit Card |
| 9/1/10 | Maddaloni0001-0005 (page 4) | Madaloni Jewlers | Gold American Eagle 1 oz | 20 | $1,308.00 | $26,683.20 | BOA x 7480 |
| 9/17/10 | Inv_25969_from_Southland_Coins_and_Collectibles_Inc._6624 | Southland Coins | Gold Canadian Maple Leaf 1 oz | 38 | $1,318.40 | $50,099.20 | ML x10608 |
| 4/25/11 | CASH | | Ausi Philharmoniker. 1 oz | 2 | $1,520.00 | $3,040.00 | CASH |
| 8/19/11 | CASH | Chris McCallan | Gold American Eagle 1 oz | 8 | $1,877.80 | $15,022.40 | CASH |
| | | | Johnson Matthey Gold Bars 32.15 oz | | | | Cash |
| | | | Gold American Eagle 1 oz | | | | ML x10608 |
| | | | Gold Canadian Maple Leaf 1 oz | | | | Seton |
| 5/27/08 | Inv_21375_from_Southland_Coins_and_Collectibles_Inc._6624. also on. Seton GL 2008 (page 315-319).pdf | Southland Coins | Silver Canadian Maple leaf 2008 | 2500 | $20.50 | $51,250.00 | Seton |
| 1/30/09 | | Southland Coins | Silver Eagles Coins 2009 | | | | ML x10608 |
| 12/1/09 | Inv_24345_from_Southland_Coins_and_Collectibles_Inc._6624.pdf | Southland Coins | Silver Canadian Maple Leaf 1 oz | 6700 | $22.55 | $151,085.00 | ML x10479 |
| 5/25/07 | Americorp Check History | Madaloni Jewelers | Gold American Eagle 1 oz | 775 | $12.90 | $10,000.00 | Americorp |
| 10/31/07 | TM14506-14524;Metals (page 2) | California Numis. Inv. | Silver no name 1 oz | 1002 | $15.10 | $15,130.20 | BOA x7480 |
| 1/30/09 | | Southland Coins | Silver Eagles Coins 2009 | | | | ML x10608 |
| 2/2/11 | CASH | | Gold Saint-Gaudens | 2 | $1,353.00 | $1,520.00 | CASH |
| 11/16/12 | CNI 001-003.pdf. - paid by wire | California Numis. Inv. | Gold American Eagle 1 oz | 3 | $1,794.00 | $5,382.00 | CASH |
| | | | Gold American Buffalo 1 oz AUBU | | | | BOA x7480 |
| | | | Gold American Eagle 1 oz | | | | BOA x 7480 |
| | | | Gold Canadian Maple Leaf 1 oz | | $1,877.80 | | CASH |
| 1/30/09 | | Southland Coins | Silver Eagles Coins 2009 | | | | ML x10608 |
| 9/17/10 | Inv_25968_from_Southland_Coins_and_Collectibles_Inc._6624 | Southland Coins | Silver Canadian Maple Leaf 1 oz | 4376 | $22.85 | $99,991.60 | ML x10608 |
| 10/14/10 | CNI 001-003.pdf. - paid by cashiers check | California Numis. Inv. | Silver Eagles Coins | 100 | $23.38 | $2,338.00 | CASH |
| 11/15/10 | Inv_26424_from_Southland_Coins_and_Collectibles_Inc._6624. Media Mogul GL 2010 (page 157).pdf | Southland Coins | Silver Eagles Coins | 500 | $28.65 | $14,325.00 | Intermark |
| 1/31/11 | CNI 001-003.pdf. - paid by cashiers check | California Numis. Inv. | Silver Eagles Coins | 100 | $32.29 | $3,229.00 | CASH |
| | | | Silver Canadian Maple Leaf 1 oz | | | | ML x10479 |
| 5/25/07 | | Madaloni Jewlers | Silver Canadian Maple Leaf 1 oz | | | | Americorp |
| 10/31/07 | | California Numis. Inv. | Silver no name 1 oz | | | | BOA x7480 |
| 1/30/09 | | Southland Coins | Silver Eagles Coins 2009 | | | | ML x10608 |
| 9/17/10 | | Southland Coins | Silver Canadian Maple Leaf 1 oz | | | | ML x10608 |
| 5/25/07 | | Madaloni Jewlers | Silver Canadian Maple Leaf 1 oz | | | | Americorp |
| 1/30/09 | | Southland Coins | Silver Eagles Coins 2009 | | | | ML x10608 |
| 1/30/09 | | Southland Coins | Silver Eagles Coins 2009 | | | | ML x10608 |
| | | | | | | $1,451,406.72 | |

| Sell Date | Evidence file name | Original Cost | Sold To | Name | Qty | Sold Price | Sale Total | Gain | Money Went To |
|---|---|---|---|---|---|---|---|---|---|
| 5/25/12 | 47-E HELLCO1212YT-export.pdf. Page 88.- Checks deposited into Hello Performamce. & SilverSale1-May25, 2012 | $43,974.77 | Madaloni | Johnson Matthey Gold Bars 32.15 oz | 1 | $49,401.00 | $49,401.00 | $5,426.23 | Hello Performance |
| 5/25/12 | 47-E HELLCO1212YT-export.pdf. Page 88.- Checks deposited into Hello Performamce. & SilverSale2May25, 2012 | $43,974.77 | Madaloni | Johnson Matthey Gold Bars 32.15 oz | 1 | $49,401.00 | $49,401.00 | $5,426.23 | Hello Performance |
| 6/8/12 | TM14506-14524;Metals (Page 3) | $16.42 | Coin Gallery | Silver Eagles Coins 2009 | 175 | $29.60 | $5,180.00 | $2,306.50 | BOA x 1309 |
| 6/8/12 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $27.05 | Coin Gallery | Silver Eagles Coins | 1000 | $29.60 | $29,600.00 | $2,550.00 | BOA x 1309 |
| 6/8/12 | Bullion ck 73k.pdf | $43.60 | Coin Gallery | Silver Eagles | 825 | $29.60 | $24,420.00 | -$11,550.00 | BOA x 1309 |
| 6/23/2012 | TM14506-14524;Metals (page 19) | $705.52 | Coin Gallery | Gold American Eagle 1 oz | 10 | $1,575.00 | $15,750.00 | $8,694.80 | BOA x4091 |
| 6/23/2012 | TM14506-14524;Metals (page 19) | $923.00 | Coin Gallery | Gold Canadian Maple Leaf 1 oz | 10 | $1,550.00 | $15,500.00 | $6,270.00 | BOA x4091 |
| 6/23/2012 | TM14506-14524;Metals (page 19) | $938.00 | Coin Gallery | Gold Canadian Maple Leaf 1 oz | 107 | $1,550.00 | $165,850.00 | $65,484.00 | BOA x4091 |
| 6/23/2012 | TM14506-14524;Metals (page 19) | $893.00 | Coin Gallery | Gold Canadian Maple Leaf 1 oz | 108 | $1,550.00 | $167,400.00 | $70,956.00 | BOA x4091 |
| 6/23/2012 | TM14506-14524;Metals (page 19) | $16.42 | Coin Gallery | Silver Eagles Coins | 1,000 | $28.00 | $28,000.00 | $11,580.00 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $705.52 | Bullion Trading | Gold American Buffalo Coin | 14 | $1,593.80 | $22,313.20 | $12,435.92 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $1,464.00 | Bullion Trading | Platinum Eagle 1 oz APUS | 3 | $1,377.00 | $4,131.00 | -$261.00 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $395.00 | Bullion Trading | Palladium APAML | 15 | $555.00 | $8,325.00 | $2,400.00 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $408.00 | Bullion Trading | Gold Eagle 1/2 oz | 20 | $15,938.00 | $15,938.00 | $7,778.00 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $819.00 | Bullion Trading | Gold American Eagle 1 oz | 10 | $1,593.80 | $15,938.00 | $7,748.00 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $819.00 | Bullion Trading | Gold American Buffalo 1 oz AUBU | 2 | $1,593.80 | $3,187.60 | $1,549.60 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $15,280.00 | Bullion Trading | Pamp Suisse Bars 10 oz | 6 | $95,628.00 | $95,628.00 | $3,948.00 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $974.75 | Bullion Trading | Gold Canadian Maple Leaf 1 oz | 103 | $1,593.80 | $164,161.40 | $63,762.15 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $1,276.00 | Bullion Trading | Gold Canadian Maple Leaf 1 oz | 118 | $1,593.80 | $188,068.40 | $37,500.40 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $1,235.80 | Bullion Trading | Gold Canadian Maple Leaf 1 oz | 40 | $1,593.80 | $63,752.00 | $14,320.00 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $1,308.00 | Bullion Trading | Gold American Eagle 1 oz | 12 | $1,593.80 | $19,125.60 | $3,429.60 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $1,318.40 | Bullion Trading | Gold Canadian Maple Leaf 1 oz | 38 | $1,593.80 | $60,564.40 | $10,465.20 | BOA x4091 |
| 8/3/2012 | | $1,520.00 | Bullion Trading | Ausi Philharmoniker. 1 oz | 2 | $1,593.80 | $3,187.60 | $147.60 | BOA x4091 |
| 8/3/2012 | | $1,877.80 | Bullion Trading | Gold Canadian Maple Leaf 1 oz | 7 | $1,593.80 | $11,156.60 | -$1,988.00 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $43,974.77 | Bullion Trading | Johnson Matthey Gold Bars 32.15 oz | 1 | $51,240.67 | $51,240.67 | $7,265.90 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $705.52 | Bullion Trading | Gold American Eagle 1 oz | 4 | $1,593.80 | $6,375.20 | $3,553.12 | BOA x4091 |
| 8/3/2012 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $819.00 | Bullion Trading | Gold American Eagle 1 oz | 4 | $1,593.80 | $6,375.20 | $2,803.20 | BOA x4091 |
| 1/25/2013 | McCallanSilverTransaction2013.jpg | $20.50 | Coin Gallery | Silver Canadian Maple leaf | 2,500 | $32.05 | $80,125.00 | $28,875.00 | BOA x1309 |
| 1/25/2013 | McCallanSilverTransaction2013.jpg. And TM14506-14524;Metals (page 17) | $16.42 | Coin Gallery | Silver Eagles Coins | 3,000 | $32.55 | $97,650.00 | $48,390.00 | BOA x1309 |
| 1/25/2013 | McCallanSilverTransaction2013.jpg | $22.55 | Coin Gallery | Silver Canadian Maple leaf | 2,500 | $32.05 | $80,125.00 | $23,750.00 | BOA x1309 |
| 4/25/14 | | $12.90 | central Florida Coin & Bullion | Silver Canadian Maple Leaf 1 oz | 418 | $18.00 | $7,524.00 | $2,131.80 | Peter WF |
| 4/25/14 | Bullion ck 73k.pdf | $15.10 | central Florida Coin & Bullion | Silver no name 1 oz | 6 | $18.00 | $108.00 | $17.40 | Peter WF |
| 4/25/14 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $16.42 | central Florida Coin & Bullion | Silver Eagles Coins 2009 | 1526 | $18.00 | $27,468.00 | $2,411.08 | Peter WF |
| 4/25/14 | Bullion ck 73k.pdf | $1,353.00 | Central Florida Coin & Bullion | Gold Saint-Gaudens | 2 | $1,300.89 | $2,601.78 | -$104.22 | Peter WF |
| 4/25/14 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $1,794.00 | central Florida Coin & Bullion | Gold American Eagle 1 oz | 3 | $1,300.89 | $3,902.67 | -$1,479.33 | Peter WF |
| 4/25/14 | | $819.00 | Central Florida Coin & Bullion | Gold American Buffalo 1 oz AUBU | 8 | $1,300.89 | $10,407.04 | $3,855.04 | Peter WF |
| 4/25/14 | | $1,308.00 | central Florida Coin & bullion | Gold American Eagle 1 oz | 8 | $1,300.89 | $10,407.12 | -$56.88 | Peter WF |
| 4/25/14 | | $1,877.80 | Central Florida Coin & Bullion | Gold Canadian Maple Leaf 1 oz | 1 | $1,300.89 | $11,156.60 | $9,278.80 | Peter WF |
| 7/17/14 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $16.42 | Southland Coins | Silver Eagles Coins | 3300 | $22.83 | $75,339.00 | $21,153.00 | WF x0716 |
| 7/17/14 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $22.85 | Southland Coins | Silver Canadian Maple Leaf 1 oz | 4,175 | $23.03 | $96,150.25 | $751.50 | WF x0716 |
| 7/17/14 | | $23.38 | Southland Coins | Silver Eagles Coins | 100 | $22.83 | $2,283.00 | -$55.00 | WF x0716 |
| 7/17/14 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $28.65 | Southland Coins | Silver Eagles Coins | 500 | $22.83 | $11,415.00 | -$2,910.00 | WF x0716 |
| 7/17/14 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $32.29 | Southland Coins | Silver Eagles Coins | 100 | $22.83 | $2,283.00 | -$946.00 | WF x0716 |
| 7/17/14 | CostvsSalebasisGoldTimMcCallan2012Ta xesCapitalGain | $22.55 | Southland Coins | Silver Canadian Maple Leaf 1 oz | 4200 | $23.03 | $96,726.00 | $2,016.00 | WF x0716 |
| 6/11/15 | Bullion ck 73k.pdf | $12.90 | Southland Coins | Silver Canadian Maple Leaf 1 oz | 24 | $17.78 | $426.72 | $117.12 | WF x9865 |
| 6/11/15 | Bullion ck 73k.pdf | $15.10 | Southland Coins | Silver Canadian Maple Leaf 1 oz | 996 | $16.63 | $16,563.48 | $1,523.88 | WF x9865 |
| 6/11/15 | Bullion ck 73k.pdf | $16.42 | Southland Coins | Silver Eagles Coins 2009 | 180 | $18.28 | $3,290.40 | $334.80 | WF x9865 |
| 6/11/15 | Bullion ck 73k.pdf | $22.85 | Southland Coins | Silver Canadian Maple Leaf 1 oz | 201 | $17.78 | $3,573.78 | -$1,019.07 | WF x9865 |
| 2015 | email form Tim computer | 12.9 | Kid gift | Silver Canadian Maple Leaf 1 oz | 333 | $18.00 | $5,994.00 | $1,698.30 | CASH |
| 2015 | email form Tim computer | $16.42 | Trustee | Silver Eagles Coins 2009 | 1 | $0.00 | $0.00 | -$16.42 | Trustee |
| 5/4/17 | TM14506-14524;Metals (Page 3) | $16.42 | Southland Coins | Silver Eagles Coins 2009 | 18 | $0.00 | $0.00 | -$295.56 | Trustee |
| | | | | | | | | $348.33 | FEES |
| | | | | | | | $1,935,489.72 | $483,771.02 | |

**G. TAX REFUND NOT ACCOUNTED FOR:** The Trustee submitted to the court Trustee's Exhibit TX703, as seen below and in Appendix A, which included tax refund documents for the tax years 2002, 2003 and 2004. These credits were awarded at the conclusion of an IRS audit



on June 18, 2007. One refund for $631,520.58, a second letter for $238,215.00 and a third letter for $28,364.00. These credit letters came to total of $898,809.58. The Trustee tried to convince the court that McCallan is hiding these

refunds because these exact numbers do not appear on Ms. Eckstein's list of deposits. Ms. Eckstein was presented with these documents in court and she explained that McCallan did not actually receive the entire refund. Ms. Eckstein also pointed out that the document itself clearly

16

stated "Amount to be refunded to you (if you owe no other taxes or debts we are required to collect)."  This means that if any other taxes from McCallan are due at the time of this refund, the refund itself will be applied to that debt before money would be sent back.  Ms. Eckstein did in fact account for refunds in 2007 that totaled $196,475.88.  This is highlighted in the

| | | | |
|---|---|---|---|
| 2007.4 | Tax refund | refund deposited into bank of America X7480 | (9,006.34) |
| | Total Federal  paid in 2007 | | (9,006.34) |
| | | | |
| 2008.4 | Paid by Seton | | 850,000.00 |
| 2008.4 | Paid by Seton | | 750,000.00 |
| | | | |
| 2008.6 | Paid by Seton | | 750,000.00 |
| 2008.10 | Paid by Seton | | 750,000.00 |
| | Total Federal  paid in 2008 | | 3,100,000.00 |
| | | | |
| 2009.1 | Paid by Seton | | 750,000.00 |
| | Paid by Seton found in doc named:    Distributions 08 and 09 and 10 S&P | | |
| 2009.4 | detail | | 950,000.00 |
| 2009.6 | Taxes: US Tresury | | 700,000.00 |
| | Taxes: US Tresury paid in 2009 | | 2,400,000.00 |
| | | | |
| 2010.5 | UNITED STATES TREASURY  Check #  002051  ck date  4/15/2010 | | 850,000.00 |
| | Taxes: US Tresury taxes paid 2010 | | 850,000.00 |
| | | | |
| 2012.1 | tax refund | | (791,767.00) |
| 2012.10 | US Treasury Tax Refund | | (329,599.00) |
| 2012.11 | tax refund | | (75,226.00) |
| 2012.11 | tax refund | | (61,372.87) |
| | Taxes: US Tresury taxes 2012 | | (1,257,964.87) |
| | | | |
| 2013.11 | tax refund | | (2,335.00) |
| | Taxes: US Tresury taxes 2013 | | (2,335.00) |
| | | | |
| 2015.4 | Tax Refund | | (9,063.00) |
| 2015.11 | Tax Refund | | (60,524.00) |
| | Taxes: US Tresury taxes 2015 | | (69,587.00) |
| | | | |
| 2017.1 | Taxes: Dept. of Treasury | | 331.53 |
| 2017.3 | Taxes: US Treasury 1136 | | 239.97 |
| 2017.3 | Taxes: US Treasury 1137 | | 333.71 |
| 2017.3 | Taxes: US Treasury 1138 | | 355.46 |
| 2017.4 | Taxes: Dept. of Treasury | | 331.53 |
| 2017.4 | Taxes: Dept. of Treasury | | 241.92 |
| 2017.4 | Taxes: US Treasury 1151 | | 1,700.00 |
| | Taxes: US Tresury taxes paid 2017 | | 3,534.12 |
| | | | |
| 2007.7 | Tax refund | Refund deposited into Merrill Lynch x10608 | (41,000.82) |
| 2007.5 | Tax refund | refund deposited into bank of America X7480 | (14,429.16) |
| 2007.5 | Tax refund | refund deposited into Merrill Lynch x10608 | (127,039.56) |
| 2007.12 | Over Payment of Taxes for 2007 applied to 2008 Estimated tax | | 23,582.00 |
| | Total State  taxes paid 2007 | | (158,887.54) |

illustration boxed in red. This is an excerpt from the $16 million spreadsheet and as you can see

in the tax payment section, the refunds were accounted for by showing the actual amount received by McCallan and which bank account it was deposited into. During 2007 there were no tax payments made until December 2007 for $23,582. It would stand to reason that McCallan owed taxes of $702,333.70 and it was paid by using the refund credit. Since he did not use all of the credit the IRS ultimately refunded the $196,475.88 which has been calculated into McCallan's revenue on the Trustee's spreadsheet. During Mr. Carol's cross examination he admitted that it is normal for people who have tax credits with the IRS to choose between letting the IRS hold the money for future taxes that become due or getting a refund check. Please see May 7th Transcript page 164 Lines 6-18.

```
                          Carroll - Cross                    164

 1   Q     Sure.

 2   A     -- is what it says.

 3   Q     But that's not actually showing that it went into an

 4   account for Mr. McCallan via check, correct?

 5   A     No, sir.  It does not.

 6   Q     And when you get a tax refund, you've got a couple of

 7   choices.  You can either keep it and give it to the government

 8   for next year, correct?  You can leave it there so that you

 9   don't have as much burden to pay the following year, correct?

10   A     I believe that to be the case.  Yes, sir.

11   Q     Or you could pay if there were additional outstanding

12   taxes because this refund came in 2007, if there was money to

13   be paid for '05 or '06, you could use that money to pay '05 or

14   '06, correct?

15   A     It's like if there was some obligation that you had

16   unpaid?

17   Q     Yes, sir.

18   A     That's right.
```

18

In this case, it is clear that McCallan's credits were applied and the excess was sent to him. Below are samples that show that McCallan applied tax credits towards future payments rather than taking a refund.

CLIENT MC8932

**SCHULTHEIS & PANETTIERI, LLP**
**210 MARCUS BOULEVARD**
**HAUPPAUGE, NY 11788-3740**
**(631) 273-4778**

October 4, 2011

TIMOTHY T. MCCALLAN and JEANNIE G. (MANZO) MCCALLAN
17 CRESTON TERRACE
FORT SALONGA, NY 11768-1328

DCN: 00-110189-13216-1
Filing Status: Married filing jointly

Dear Timothy and Jeannie G.,

Your 2010 Federal Income Tax Return was acknowledged as accepted by the Internal Revenue Service on October 4, 2011. No tax is payable with the filing of this return. There is an overpayment of $379,289, of which $379,289 has been applied to your 2011 estimated tax. If you have questions about the return, wait four weeks from the acceptance date before calling the IRS Tele-Tax number, 1-800-829-4477.

Your 2010 New York Income Tax Return was acknowledged as accepted by the State of New York on October 4, 2011. There is an overpayment of $108,361, of which $108,361 has been applied to your 2011 estimated tax. No tax is payable with the filing of this return.

Please be sure to call if you have any questions.

Sincerely,

VINCENT F. PANETTIERI

19

## H. IRS AUDITED MCCALLAN SEVERAL TIMES AND FOUND NO WRONGDOING.

The Trustee and Mr. Carroll found it odd that McCallan made many large transfers back and forth between his personal accounts and his companies. They also implied that McCallan kept his books this way to hide money. These transfers were made in this manner due to cash flow problems. If one company was struggling and needed money to cover bills, another company or McCallan personally would transfer Funds to help. When these companies were financially capable, they would repay the loan and perhaps even became a lender to yet another company. McCallan owned Intermark, a marketing company that provided processing services, affiliate advertising and leads to the other companies. In this case, accounts payables and receivables were created as well as journal accounts called "due to" and "due from". Many real money transfers stemmed from invoices and payments for services by one company to another. As sole owner, McCallan is fully within his right to write off open invoices in one company against open accounts payable on another. This can be legally done by a journal entry creating a taxable event which records a distribution one side and a contribution on the other. McCallan's companies were closing one by one, his computer which was cloned by the Trustee, includes many emails evidencing the financial troubles of each of these companies.

McCallan has been audited many times by independent auditors and the IRS. None of these organizations found fault in how McCallan's accounting records were being recorded and how transactions were being handled. As a matter of fact, there is a letter from the IRS in 2012 where McCallan reported a $2.9 million loss in 2010 and after the audit the IRS found that there were no changes due to the tax return. Please see below:

20

**Small Business and Self-Employed**

999 Stewart Ave, Suite 110
Bethpage NY 11714

Timothy T & Jeannie McCallan
17 Creston Terrace
Fort Salonga NY 11768-1328

COPY

Date:
  August 8, 2012
Taxpayer Identification Number:
  ▊▊▊▊▊
Form:
  1040
Tax Period(s) Ended:
  201012

Person to Contact:
  Carolyn Richardson

Contact Telephone Number:
  516-576-7358
Employee Identification Number:
  1001718009

Dear Timothy T & Jeannie McCallan:

I have completed the examination of your tax return for the year(s) shown above. I am pleased to inform you I'm proposing no change to your tax return. As indicated in the enclosed Form 4549, *Income Tax Examination Changes,* or 4549-A, *Income Tax Discrepancy Adjustments (Examination No Change Report),* my findings are subject to the Area Director's approval. We will send you a final letter when we finish processing your file.

If you have any questions, please call or write me at the telephone number or address shown above. If you write, please include your telephone number, the best time for me to call in case I need to contact you, and a copy of this letter.

Thank you for your cooperation.

Sincerely yours,

Carolyn Richardson
Internal Revenue Agent

Enclosures:
Form 4549 or 4549-A
Pub 3498

Letter 3401 (Rev. 7-2009)
Catalog Number 30903E

21

| Form **4549-A**<br>(Rev. May 2008) | Department of the Treasury-Internal Revenue Service<br>**Income Tax Discrepancy Adjustments** | | | Page 1 of 2 |
|---|---|---|---|---|

| Name and Address of Taxpayer | Taxpayer Identification Number | | Return Form No. 1040 |
|---|---|---|---|

Timothy T & Jeannie McCallan
17 Creston Terrace
Fort Salonga  NY  11768-1328

| | Person with whom examination changes were discussed. | Name and Title:<br>Richard Joseph Prantil |
|---|---|---|

| 1. Adjustments to Income | Period End<br>12/31/2009 | Period End | Period End |
|---|---|---|---|
| a. NO CHANGE-SUBJECT TO APPROVAL BY AREA | | | |
| b. DIRECTOR, AREA MANAGER, OR DIRECTOR OF | | | |
| c. FIELD OPERATIONS. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| p. | | | |
| 2. Total Adjustments | 0.00 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | (2,936,547.00) | | |
| 4. Corrected Taxable Income | (2,936,547.00) | | |
|   Tax Method | TAX TABLE | | |
|   Filing Status | Joint | | |
| 5. Tax | 0.00 | | |
| 6. Additional Taxes / Alternative Minimum | | | |
| 7. Corrected Tax Liability | 0.00 | | |
| 8. Less  a. Credits | 0.00 | | |
|   Credits  b. | | | |
|     c. | | | |
|     d. | | | |
| 9. Balance (Line 7 less total of Lines 8a thru 8d) | 0.00 | | |
| 10. Plus  a. | | | |
|   Other  b. | | | |
|   Taxes  c. | | | |
|     d. | | | |
| 11. Total Corrected Tax Liability (Line 9 plus Lines 10a thru 10d) | 0.00 | | |
| 12. Total Tax Shown on Return or as Previously Adjusted | 0.00 | | |
| 13. Adjustments to: a. | | | |
|     b. | | | |
|     c. Addnl Child Tax Credit | 0.00 | | |
| 14. Deficiency-Increase in Tax or (Overassessment - Decrease in Tax) (Line 11 less Line 12 adjusted by Lines 13a through 13c) | 0.00 | | |
| 15. Adjustments to Prepayment Credits-Increase (Decrease) | | | |
| 16. Balance Due or (Overpayment) - (Line 14 adjusted by Line 15) (Excluding interest and penalties) | 0.00 | | |

Catalog Number 23110T                    www.irs.gov                    Form **4549-A** (Rev. 5-2008)

Case 11-03007   Doc 807   Filed 06/07/19   Entered 06/07/19 18:07:50   Desc Main
Document      Page 22 of 54

**I. TOTAL MONEY MCCALLAN ACTUALLY RECEIVED:** The Trustee tried to convince this court that McCallan received almost $31 million dollars by presenting Mr. Caroll's spreadsheet submitted as Trustee's Exhibit TX257. In May 2019, Ms. Eckstein talked through an example to illustrate actual cash received to prove the money McCallan had.

1. McCallan company makes $200 and pays $50 in business expenses

2. McCallan is on Payroll and gets paid $75.00

3. McCallan has to pay taxes on his payroll - $75.00

4. McCallan deposits his paycheck into his checking account – total balance $75

5. Company pays a 3rd party $25.00 directly for personal expenses

6. McCallan has to pay taxes on the $25 the company paid out for his personal bills

7. McCallan transfer money from checking into Savings $25.00

8. McCallan decides to take money directly out of the company as a distribution

9. McCallan has to pay taxes on his $50 distribution

10. McCallan deposits his $50 distribution into his checking account

11. McCallan transfers $25.00 to his Mutual fund account

12. McCallan had to pay taxes on $150.00

13. Total deposits into all accounts was $175.00

14. Total money transfer between personal account to personal account was $50.00

15. TOTAL MONEY HE ACTUALLY GOT = $125.00. total deposits minus transfers.

16. Trustee's position for the 16 million missing is prove what he did with the $150 (taxable income). They are including the $25.00 he never got as missing money.

17. Subtract total income to pay taxes on minus the money he got = Money he NEVER GOT

18. McCallan puts money back into his company.

23



This illustration made a clear distinction between cash McCallan received and taxable events accounting. The Trustee has been using the tax distribution number of $30,750,202.92 rather than the actual money received, thus creating a red herring in the amount of money to account for. Ms. Eckstein added transactions McCallan actually incurred in 2016 and 2017 to Mr. Caroll's schedule that only detailed through the end of 2015. Mr. Caroll's total was adjusted from $30,750,202.92 as of 12/31/2015 to $31,960,806.82 which is the total amount that McCallan had to pay taxes on through 2017.

The actual cash received by McCallan is detailed in the chart below. The total credits in all of McCallan's personal bank accounts, College Funds and IRA's, total $41,474,400.20. This amount includes $18,969,733.97 which was actual transfers between his own personal accounts



Case 11-03007   Doc 807   Filed 06/07/19   Entered 06/07/19 18:07:50   Desc Main
Document   Page 25 of 54

which should be subtracted.  This adjusts actual receipts to $22,504,666.23.    The difference between this number and the Mr. Carol's number of $31,960,806.82 is $9,456,140.59 which represents money he needed to pay taxes on but never actually received.   MAS200 details all the money that was paid directly to 3rd parties from a company, all journal entries creating taxable events and real money transferred from one company to another and therefore is not secreted.

Following the chart above, McCallan's actual cash receipts from 2007 to 2017 were $22,504,666.23.  Added to this amount are the beginning balances in McCallan's bank accounts as of 12/31/2006 which total  $1,991,769.35 .  There was also a good faith amount of $299,662.06 added which is thought to be an error that was logged twice on Ms. Eckstein's schedule.  These 3 amounts added together total  $24,796,097.64 which are the total receipts that need to be reconciled.

McCallan's team have proven that his actual expenses totaled $23,421,490.57 versus Mr. Caroll's schedule claiming $14.75 million, a difference of $8.65 million.  Mr. Carol's estimate of expenses incurred by McCallan does not reflect the actual expenses incurred by McCallan as evidenced by his bank statements.  Ms. Eckstein provided vital information relating to the evidence so it could be traced to its source.  The entries on the spreadsheet included dates, the bank accounts, file locations, document names and page numbers.  The data was pulled from copies of checks and deposits, bank statements, copies of invoices and receipts, check registers, tax returns, emails, corporate financial reports from Mas200 and all other documents located in the RFP's.  Ms. Eckstein was willing to sit with the Trustee to answer questions, but the offer has been rejected every time by Mr. Olen.

In summary, McCallan actually had cash receipts of $24,796,097.64 while spending $23,421,490.57 which nets a difference of $1,374,607.07. The balance in the Morgan Stanley accounts is $1,247,529.53 which leaves $246,731.84 unexplained.

Therefore, it is clear that McCallan has provided the court with all of the information requested to prove the whereabouts of the money following two different formats, the taxable income and the cash basis model and has purged himself of contempt.

**J. ECKSTEIN'S AND CAROL'S STARTING NUMBERS CLOSELY MATCH**. On May 7, 2019 Mr. Carol created and had submitted Trustees Exhibit TX 665 as seen below which he details cash receipts by McCallan for the period 2007 to 2015 of $22,366,502. The schedule prepared by Ms. Eckstein's details cash receipts of $22,504,666.23 for the same time period, which is only a difference of $138,164.23, and Eckstein's receipts are higher than Caroll's receipts.



The Trustee, by the production of their own document, knows McCallan only received $22.3 million, yet led the court to believe he received close to $32 million.  Proof the Trustee knows and understands the actual money numbers comes from Mr. Caroll's direct testimony on the May 7th Transcript page 56, Line 6-16 below:

```
 6  Q    And what is the total amount of net cash and property you
 7  projected after taxes but before expenses for 2007  through 2015
 8  in Trustee's Exhibit 257?
 9  A    A bit more than $22 million.
10  Q    Why are you comparing McCallan's deposits in Trustee's
11  Exhibit 671 to estimated cash after taxes on Truste e's Exhibit
12  257?
13  A    Because, Your Honor, we know that there were some
14  distributions by McCallan companies that were paid  to third
15  parties on his behalf that never actually made it t o his bank
16  account.
```

Then again on page 58, Line 13 & 14, during Mr. Caroll's direct questioning he agrees his number and Ms. Eckstein's number are very close.

```
13  period of time that we're talking about, I believe  they're very
14  comparable, they're consistent.
```

Once again, a red herring is being used by the Trustee in order to inflate the numbers portrayed to the Court and further proves that the Trustee knows the real amount of money received as well as the amount of money spent from the production of evidence and the general ledgers from Mas200.

Case 11-03007    Doc 807    Filed 06/07/19    Entered 06/07/19 18:07:50    Desc Main
Document    Page 28 of 54

**K.  TRUSTEE INFLATED MCCALLANS CASH RECIEPTS:**  The Trustee has recently inflated their original cash receipts claim from $30.75 million to $35.75 million. During the May 2019 court dates, the Trustee submitted two documents, first, Trustee's exhibit TX677, which is Mr. Caroll's spreadsheet that assumes McCallan received $30.75 million with highlighted boxes showing there are no distributions from Americorp for three years, 2009, 2010 and 2011.

**Distributions and Returns of Capital from Businesses plus Wages 2007-2015**

TX 677

| Name | | | | | Distributions | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | Total |
| Seton Corp | $ 434,318 | $ 10,619,987 | $ 4,516,858 | $ 2,016,397 | $ 921,376 | $ 20 | $ - | $ 9,750 | $ - | $ 18,518,706 |
| IMM Interactive, Inc. (Formerly Intermark Communications, Inc.) | 465,706 | 173,311 | 1,918,036 | 884,184 | 25,996 | - | - | - | - | 3,467,233 |
| Vortex Debt Group, Inc. | - | - | - | 384,548 | 733,791 | 366,677 | 251,275 | 69,949 | 18,998 | 1,825,238 |
| Media Mogul, Inc. | - | 3,613 | - | 659,325 | - | 19,446 | - | - | - | 682,384 |
| Americorp, Inc. | 442,118 | 165,498 | - | - | - | 3,641 | - | - | - | 611,257 |
| Alesa Group, Inc. | - | - | - | - | 183,865 | 102,397 | 39,763 | - | - | 326,025 |
| Clear Blue Debt Solutions, Inc. | - | - | - | - | 40,126 | 37,938 | 44,535 | 29,056 | 6,727 | 158,382 |
| Achievable, Inc. | 34,195 | 4,903 | - | - | - | 82,611 | - | 8,079 | - | 129,788 |
| Reliancedebt, Inc. | - | - | - | 54,954 | - | - | - | - | - | 54,954 |
| Hello Performance Technology, Inc. | - | - | - | - | - | - | 9,980 | - | - | 9,980 |
| Centennial Vitamins, Inc. | - | - | - | - | 6,291 | 5,893 | - | - | - | 12,184 |
| Strategicpoint Group | - | 1,000 | - | - | - | - | - | - | - | 1,000 |
| Swizzle.net, Inc. | - | - | - | - | - | - | - | - | - | - |
| Bankruptcy Network, Inc. | - | - | - | - | - | - | - | - | - | - |
| Internet Millionaire Next Door, Inc. | - | - | - | - | - | - | - | - | - | - |
| Social Steals, Inc. | - | - | - | - | - | - | - | - | - | - |
| Myskinnymini, Inc. | - | - | - | - | - | - | - | - | - | - |
| Pizzonia Associates Development Corp. | - | - | - | - | - | - | - | - | - | - |
| WAV Team, Inc. | - | - | - | - | - | - | - | - | - | - |
| J Grace & Co LLC | - | - | - | - | - | - | - | - | - | - |
| Subtotal | $ 1,376,337 | $ 10,968,312 | $ 6,434,894 | $ 3,999,408 | $ 1,911,445 | $ 618,623 | $ 345,553 | $ 116,834 | $ 25,725 | $ 25,797,131 |
| Total Wages | 2,309,447 | 788,576 | 809,887 | 582,041 | 273,929 | 79,687 | 79,715 | 24,990 | 4,800 | 4,953,072 |
| **Total** | **$ 3,685,784** | **$ 11,756,888** | **$ 7,244,781** | **$ 4,581,449** | **$ 2,185,374** | **$ 698,310** | **$ 425,268** | **$ 141,824** | **$ 30,525** | **$ 30,750,203** |

Second, Trustee's Exhibit TX682 included the schedule K-1 portion of the Tax return for Americorp from 2010 and the final page of the detailed general ledger from 2010 from Americorp of the distribution account and the final page of the detailed general ledger of the contribution account.   Mr. Caroll brought it to the courts attention the schedule K-1 does not list a distribution amount.  This is correct while reviewing the general ledger for Americorp,

Case 11-03007    Doc 807    Filed 06/07/19    Entered 06/07/19 18:07:50    Desc Main
Document    Page 29 of 54

specifically the contribution and distribution accounts, it shows that the contributions are higher than the  distributions, and after the two numbers are netted together, there is no taxable amount required to be reported on the tax return.

It was the intention of the Trustee to convince this court that McCallan Mr. is hiding an additional $3.34 million because Mr. Caroll never added the year end distribution number to the Trustee's original $30.75 million.  It has already been established that the taxable distribution amount has no bearing on this case.  This is just another red herring.  Ms. Eckstein accounted for the money that McCallan actually received from Americorp in 2010 in her deposit schedule.  It does not matter if the Trustee wants to increase the taxable distribution number to a billion dollars it will never change the fact that McCallan only received $24,796,097.64.

After reviewing the ledgers, Mr. Caroll's own evidence proves him wrong for all of his assumptions.  The Contributions ledger reveals only one of these entries, the one for 15,475.60, is money being transferred from the Achieveable to an Americorp bank account, proving that this is money never touched a personal McCallan account.  All of the other transactions are journal entries created to handle taxable events of removing a payable or loan from one company to another.  They are necessary entries that create taxable events but not cash that went directly to McCallan's personal accounts.  This one document proves that using the Trustees format of taxable events is 100% unreliable as a source to assume the amount of money McCallan had in his possession because the Trustee is only explaining the amount of money that McCallan is required to pay taxes on and does not reflect what he really received.

Case 11-03007   Doc 807   Filed 06/07/19   Entered 06/07/19 18:07:50   Desc Main
Document    Page 30 of 54

PBC

AMERICORP, INC. (070)

Detail Postings for Period 01 Thru 12 Ending 12/31/2010

Account Number/Description

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|--------|------|---------|--------|-------|-------------------|-------|--------|------------|----------------|
| | | | | | 0.00 | | | | |

**340200-0-70**

Contributions

| 12 | 12/31/2010 | JE-000925 | G/L | 00419 | | | 2,839,898.42 | | 2,839,898.42- |
| Comments: | 2010 INTERCO TO EQUITY-SETON | | | | | | | | |
| 12 | 12/31/2010 | JE-000925 | G/L | 00419 | | | 170,468.88 | | 3,010,367.30- |
| Comments: | 2010 INTERCO TO EQUITYACHIEV | | | | | | | | |
| 12 | 12/31/2010 | JE-000925 | G/L | 00419 | | | 2,234.75 | | 3,012,602.05- |
| Comments: | 2010 INTERCO TO EQUITY-VORTEX | | | | | | | | |
| 12 | 12/31/2010 | JE-000928 | G/L | 00421 | | | 889,947.11 | | 3,902,549.16- |
| Comments: | 2009 RECLASS LOAN TO EQUITY | | | | | | | | |
| 12 | 12/31/2010 | MC-000630 | A/P | 00276 | | | 15,475.60 | | 3,918,024.76- |
| Comments: | THE ACHIEVABLE APPLY | | | | | | | | |

| | Report Total: | 0.00 | 0.00 | 3,918,024.76 | 3,918,024.76- | 3,918,024.76- |
| | | 0.00 | 0.00 | 3,918,024.76 | 3,918,024.76- | 3,918,024.76- |

*[Annotation, red box:] Only the 15,475.60 was an actual transfer of money all the others were journal entries to record a taxable event*

*[Annotation, red box:] ALL of the transactions explain $3.9 million of company to company entries proving McCallan never gave the money*

*[Annotation, red box:] NONE of the contributions were made by McCallan personally*

```
1-0 |             |
1-1 | Distributions |   3,553,620.23
1-2 | Contributions | - 3,918,024.16
1-T | Total         | = - 364,403.93
```

7/29/2011

slm

Contribution

*[Annotation, yellow box:] This proves that the tax returns cannot be used to determine the amount of money McCallan actually got*

The Trustees format of taxable events is unreliable as a source to estimate the amount of actual cash received by McCallan because his taxable amount is not actually what he received. The general ledger for the distribution account for the year supplied by Mr. Carol's exhibit must be tested before one can believe the assumption that McCallan received $3.3 million more under the following scrutiny  1. Is it a distribution made to McCallan directly?  2. Is it a distribution that McCallan is paying taxes on because it is a journal entry or real money moved between Americorp and another company? 3. Is it a distribution that we directly to a 3rd party from the company bank account?  The following pages is the detailed general ledger for this year.

31

Detail Postings for Period 01 Thru 12 Ending 12/31/2010

**Account Number/Description**

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|--------|------|---------|--------|-------|-------------------|-------|--------|------------|----------------|
| 340100-0-70 Distribution | | | | | 183,836.41 | *To Pg* | | | |
| 01 | 1/15/2010 | PR-100203 | G/L | B0203 | | 2,008.24 | | | 185,844.65 |
| Comments: | WZG | | | | | | | | |
| 01 | 1/29/2010 | PR-100203 | G/L | B0203 | | 2,008.24 | | | 187,852.89 |
| Comments: | WZG | | | | *Money to TM Directly* | | | | |
| 02 | 2/12/2010 | PR-100301 | G/L | B0301 | | 1,957.86 | | | 189,810.75 |
| Comments: | WZG | | | | | | | | |
| 02 | 2/26/2010 | AP-001116 | A/P | 02991 | | 2,104.10 | | | 191,914.85 |
| Comments: | 00LOUISVI /IN: 012910 JM: Personal | | | | | | | | |
| 02 | 2/26/2010 | AP-001116 | A/P | 02991 | | 1,517.63 | | | 193,432.48 |
| Comments: | 00LOUISVI /IN: 012910-2 JM: Personal | | | *money to 3rd party Directly* | | | | | |
| 02 | 2/26/2010 | PR-100301 | G/L | B0301 | | 1,957.86 | | | 195,390.34 |
| Comments: | WZG | | | | *Money to TM directly* | | | | |
| 02 | 2/28/2010 | AP-001120 | A/P | 02994 | | 3,800.20 | | | 199,190.54 |
| Comments: | 00JETBLUE /IN: 022810 TM:Personal travel | | | | | | | | |
| 02 | 2/28/2010 | AP-001120 | A/P | 02994 | | 484.70 | | | 199,675.24 |
| Comments: | 00JETBLUE /IN: 022810-12 TM:FI to NY (Ar | | | | | | | | |
| 02 | 2/28/2010 | AP-001120 | A/P | 02994 | | 143.61 | | | 199,818.85 |
| Comments: | 00PINEDA /IN: 022810-3 DH Jet Ski Fuel | | | *money to 3rd party directly* | | | | | |
| 02 | 2/28/2010 | AP-001120 | A/P | 02994 | | 414.40 | | | 200,233.25 |
| Comments: | 00SOUTHWE /IN: 022810-11 TM:4/5 Biz Trip | | | | | | | | |
| 02 | 2/28/2010 | AP-001120 | A/P | 02994 | | 367.40 | | | 200,600.65 |
| Comments: | 00SOUTHWE /IN: 022810-3 TM:6/30 Biz Trip | | | | | | | | |
| 03 | 3/12/2010 | PR-100330 | G/L | B0330 | | 1,957.86 | | | 202,558.51 |
| Comments: | WZG | | | | | | | | |
| 03 | 3/23/2010 | AP-001123 | A/P | 03002 | | 150.00 | | | 202,708.51 |
| Comments: | 00CASH /IN: 031910 CW: TIM MCCALLAN CAS | | | *Money to TM directly* | | | | | |
| 03 | 3/26/2010 | PR-100330 | G/L | B0330 | | 1,957.86 | | | 204,666.37 |
| Comments: | WZG | | | | | | | | |
| 03 | 3/31/2010 | AP-001147 | A/P | 03028 | | 2,279.99 | | | 206,946.36 |
| Comments: | 00BERGDOF /IN: 031610 TM: PERSONAL | | | *Money to 3rd party directly* | | | | | |
| 03 | 3/31/2010 | AP-001147 | A/P | 03028 | | 394.81 | | | 207,341.17 |
| Comments: | 00CACHE /IN: 032010 TM:PERSONAL | | | | | | | | |
| 04 | 4/9/2010 | PR-100429 | G/L | B0429 | | 1,957.86 | | | 209,299.03 |
| Comments: | WZG | | | | *Money to TM directly* | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | | 1,386.82 | | 207,912.21 |
| Comments: | 00BERGDOF /IN: 042710 TM:PERSONAL | | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 424.00 | | | 208,336.21 |
| Comments: | 00BUDS /IN: 041610 JM:PERSONAL | | | *money to 3rd party directly* | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | | 362.29 | | 207,973.92 |
| Comments: | 00CACHE /IN: 040210 TM:PERSONAL | | | | | | | | |

*total money to TM on this page is 13,955.78*

*Total money paid directly to a 3rd party on this page is 10,181.73*

Run Date: 7/29/2011  9:23:40AM

G/L Date: 7/28/2011

Detail Postings for Period 01 Thru 12 Ending 12/31/2010

Account Number/Description

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 5.00 | | | 207,978.92 |
| Comments: | | 00DELTA /IN: 042210 TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 5.00 | | | 207,983.92 |
| Comments: | | 00DELTA /IN: 042210A TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 5.00 | | | 207,988.92 |
| Comments: | | 00DELTA /IN: 042210B TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 5.00 | | | 207,993.92 |
| Comments: | | 00DELTA /IN: 042210C TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 5.00 | | | 207,998.92 |
| Comments: | | 00DELTA /IN: 042210D TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 5.00 | | | 208,003.92 |
| Comments: | | 00DELTA /IN: 042210E TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 273.70 | | | 208,277.62 |
| Comments: | | 00DVFRETA /IN: 032810 TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 177.02 | | | 208,454.64 |
| Comments: | | 00HESS /IN: 042710 DH:FUEL JETSKI | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 572.93 | | | 209,027.57 |
| Comments: | | 00SAKS /IN: 032910 TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | | 196.10 | | 208,831.47 |
| Comments: | | 00SAKS /IN: 041410 TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 164.24 | | | 208,995.71 |
| Comments: | | 00SIRIUS /IN: 040410 TM:PERSONAL | | | | | | | |
| 04 | 4/14/2010 | AP-001171 | A/P | 03053 | | 225.00 | | | 209,220.71 |
| Comments: | | 00SOUTHWE /IN: 041110 JM:PERSONAL | | | | | | | |
| 04 | 4/23/2010 | PR-100429 | G/L | B0429 | | 1,957.86 | | | 211,178.57 |
| Comments: | | WZG | | | | | | | |
| 04 | 4/30/2010 | AP-001162 | A/P | 03045 | | 40.39 | | | 211,218.96 |
| Comments: | | 00BREVARD /IN: 033101A CW:PERSONAL PROP | | | | | | | |
| 04 | 4/30/2010 | AP-001162 | A/P | 03045 | | 26.71 | | | 211,245.67 |
| Comments: | | 00BREVARD /IN: 101313000P CW:PERSONAL PR | | | | | | | |
| 05 | 5/7/2010 | PR-100526 | G/L | B0526 | | 1,957.86 | | | 213,203.53 |
| Comments: | | WZG | | | | | | | |
| 05 | 5/21/2010 | PR-100526 | G/L | B0526 | | 1,957.86 | | | 215,161.39 |
| Comments: | | WZG | | | | | | | |
| 05 | 5/31/2010 | AP-001203 | A/P | 03094 | | 227.90 | | | 215,389.29 |
| Comments: | | 00BUDS /IN: 051810 JM:PERSONAL | | | | | | | |
| 05 | 5/31/2010 | AP-001203 | A/P | 03094 | | 715.91 | | | 216,105.20 |
| Comments: | | 00COSTCO /IN: 051410 JM:PERSONAL | | | | | | | |
| 05 | 5/31/2010 | AP-001203 | A/P | 03094 | | | 259.70 | | 215,845.50 |
| Comments: | | 00DVFRETA /IN: 042810 TM: RETURN | | | | | | | |
| 05 | 5/31/2010 | AP-001203 | A/P | 03094 | | 5.42 | | | 215,850.92 |
| Comments: | | 00PAYPAL /IN: 052410 TM:disputing | | | | | | | |
| 05 | 5/31/2010 | AP-001203 | A/P | 03094 | | 37.00 | | | 215,887.92 |

Money went directly to a 3rd party

Total money that went directly to 3rd parties on this page is 1,246.79

Money went directly to TM

money went directly to a 3rd party

Money went directly to TM

Total money that went to TM directly on this page is 5,873.58

Money went directly to a 3rd party

33

Case 11-03007    Doc 807    Filed 06/07/19    Entered 06/07/19 18:07:50    Desc Main
Document    Page 33 of 54

General Ledger Detail Report

Detail Postings for Period 01 Thru 12 Ending 12/31/2010

Account Number/Description

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|--------|------|---------|--------|-------|-------------------|-------|--------|------------|----------------|
| Comments: | | 00PINEDA /IN: 052010 DH:PERSONAL | | | | | | | |
| 05 | 5/31/2010 | AP-001203 | A/P | 03094 | | 100.00 | | | 215,987.92 |
| Comments: | | 00PINEDA /IN: 052510 DH:PERSONAL | | | | | | | |
| 05 | 5/31/2010 | AP-001203 | A/P | 03094 | | 100.00 | | | 216,087.92 |
| Comments: | | 00PINEDA /IN: 052510A DH: PERSONAL | | | | | | | |
| 06 | 6/18/2010 | PR-100629 | G/L | B0629 | | 1,957.86 | | | 218,045.78 |
| Comments: | | WZG | | | | | | | |
| 06 | 6/29/2010 | PR-100629 | G/L | B0629 | | 1,957.86 | | | 220,003.64 |
| Comments: | | WZG | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 80.12 | | | 220,083.76 |
| Comments: | | 00BARNOB /IN: 060510 JM: PERSONAL | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 127.20 | | | 220,210.96 |
| Comments: | | 00BUDS /IN: 060710 JM:PERSONAL | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 91.10 | | | 220,302.06 |
| Comments: | | 00COAST /IN: 062310 CK:PERSONAL | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | | 5.42 | | 220,296.64 |
| Comments: | | 00PAYPAL /IN: 052410CR TM:DISPUTE CLEARE | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 71.75 | | | 220,368.39 |
| Comments: | | 00PINEDA /IN: 060410 DH:JET SKI | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 20.59 | | | 220,388.98 |
| Comments: | | 00SHELL /IN: 062710 DH:JET SKI | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 75.00 | | | 220,463.98 |
| Comments: | | 00SHELL /IN: 06272010 DH:JET SKI | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 651.40 | | | 221,115.38 |
| Comments: | | 00SOUTHWE /IN: 060310A TM:PERSONAL | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 651.40 | | | 221,766.78 |
| Comments: | | 00SOUTHWE /IN: 060310B TM:PERSONAL | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 651.40 | | | 222,418.18 |
| Comments: | | 00SOUTHWE /IN: 060310C TM:PERSONAL | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 651.40 | | | 223,069.58 |
| Comments: | | 00SOUTHWE /IN: 060310D TM:PERSONAL | | | | | | | |
| 06 | 6/30/2010 | AP-001234 | A/P | 03129 | | 673.62 | | | 223,743.20 |
| Comments: | | 00TARGET /IN: 062710 JM:PERSONAL | | | | | | | |
| 07 | 7/2/2010 | PR-100729 | G/L | B0729 | | 1,957.86 | | | 225,701.06 |
| Comments: | | WZG | | | | | | | |
| 07 | 7/16/2010 | PR-100729 | G/L | B0729 | | 1,957.86 | | | 227,658.92 |
| Comments: | | WZG | | | | | | | |
| 07 | 7/26/2010 | AP-001239 | A/P | 03136 | | 36.41 | | | 227,695.33 |
| Comments: | | 00WBMASON /IN: 730881000 CW: SCHOOL SUPP | | | | | | | |
| 07 | 7/26/2010 | AP-001239 | A/P | 03136 | | 96.90 | | | 227,792.23 |
| Comments: | | 00WBMASON /IN: 731197000 CW: SCHOOL SUPP | | | | | | | |
| 07 | 7/26/2010 | AP-001239 | A/P | 03136 | | 86.63 | | | 227,878.86 |
| Comments: | | 00WBMASON /IN: 731630000 CW: SCHOOL SUPP | | | | | | | |

*(Annotations on page:)*
Money went directly to a 3rd party
Money went directly to TM
Money that went directly to a 3rd party on this page is 4,159.50
Money went directly to TM
Money went directly to a 3rd party
Money that went directly to Tm on this page is 7,831.44

Run Date: 7/29/2011 9:23:40AM

G/L Date: 7/28/2011

8

Page: 3

User Logon: smacpherson

SP033856

34

Detail Postings for Period 01 Thru 12 Ending 12/31/2010

Account Number/Description

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|
| 07 | 7/30/2010 | PR-100729 | G/L | B0729 | | 1,957.86 | | | 229,836.72 |
| Comments: | WZG | | | | | | | | |
| 07 | 7/31/2010 | AP-001250 | A/P | 03151 | | | 27.54 | | 229,864.26 |
| Comments: | 00PANERA /IN: 071810 TM:PERSONAL | | | | | | | | |
| 07 | 7/31/2010 | AP-001250 | A/P | 03151 | | | 91.77 | | 229,956.03 |
| Comments: | 00SHELL /IN: 062810 DH:GAS JET SKIS | | | | | | | | |
| 07 | 7/31/2010 | AP-001250 | A/P | 03151 | | | 23.25 | | 229,979.28 |
| Comments: | 00SHELL /IN: 062910 DH:GAS RED SEADOOS | | | | | | | | |
| 07 | 7/31/2010 | AP-001250 | A/P | 03151 | | | 160.94 | | 230,140.22 |
| Comments: | 00SHELL /IN: 07022010 DH:GASBOY | | | | | | | | |
| 08 | 8/13/2010 | PR-100831 | G/L | B0831 | | 1,957.86 | | | 232,098.08 |
| Comments: | WZG | | | | | | | | |
| 08 | 8/27/2010 | PR-100831 | G/L | B0831 | | 1,957.86 | | | 234,055.94 |
| Comments: | WZG | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 133.80 | | | 234,189.74 |
| Comments: | 00CUPOFJO /IN: 082110 TM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 115.00 | | | 234,304.74 |
| Comments: | 00DELTA /IN: 08182010 TM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | | 20.00 | | 234,284.74 |
| Comments: | 00DELTA /IN: 082410 TM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 69.21 | | | 234,353.95 |
| Comments: | 00FRATELL /IN: 081810 JM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 157.91 | | | 234,511.86 |
| Comments: | 00HARDROC /IN: 080810 TM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 96.87 | | | 234,608.73 |
| Comments: | 00JFKT75 /IN: 080610 TM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 21.97 | | | 234,630.70 |
| Comments: | 00PARADIE /IN: 080610 TM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 162.00 | | | 234,792.70 |
| Comments: | 00SHELL /IN: 080710 DH:GAS BOYS/5 GAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 178.01 | | | 234,970.71 |
| Comments: | 00SHELL /IN: 08072010 DH:GAS FOR JET SKI | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 149.92 | | | 235,120.63 |
| Comments: | 00TOKU /IN: 080410 JM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 193.71 | | | 235,314.34 |
| Comments: | 00USLIMO /IN: 080710 TM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | AP-001278 | A/P | 03184 | | 199.15 | | | 235,513.49 |
| Comments: | 00USLIMO /IN: 081710 TM:PERSONAL | | | | | | | | |
| 08 | 8/31/2010 | JE-000814 | G/L | 00324 | | | 134.00 | | 235,379.49 |
| Comments: | JR: TO RECLASS ENTRIES FROM DISTRIBUTION | | | | | | | | |
| 08 | 8/31/2010 | JE-000814 | G/L | 00324 | | | 69.00 | | 235,310.49 |
| Comments: | JR: TO RECLASS ENTRIES FROM DISTRIBUTION | | | | | | | | |
| 08 | 8/31/2010 | JE-000814 | G/L | 00324 | | | 158.00 | | 235,152.49 |

*Handwritten annotations on page:*
- "Money went directly to TM" (green, near PR-100729)
- "Money went directly to 3rd party" (red)
- "Money that went to tm directly on this page is 5,873.58" (yellow box)
- "Money went directly to TM" (green, near PR-100831)
- "Money went directly to 3rd party" (red)
- "Money that went directly to 3rd party on this page is 1,761.05" (yellow box)
- "this is a journal entry to reclass as a biz expense. total is 361.00" (blue)

Detail Postings for Period 01 Thru 12 Ending 12/31/2010

**Account Number/Description**

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|
| Comments: | | JR: TO RECLASS ENTRIES FROM DISTRIBUTION | | | | | | | |
| 08 | 8/31/2010 | JE-000814 | G/L | 00324 | | | 97.00 | | 235,055.49 |
| Comments: | | JR: TO RECLASS ENTRIES FROM DISTRIBUTION | | | | | | | |
| 08 | 8/31/2010 | JE-000814 | G/L | 00324 | | | 22.00 | | 235,033.49 |
| Comments: | | JR: TO RECLASS ENTRIES FROM DISTRIBUTION | | | | | | | |
| 08 | 8/31/2010 | JE-000814 | G/L | 00324 | | | 150.00 | | 234,883.49 |
| Comments: | | JR: TO RECLASS ENTRIES FROM DISTRIBUTION | | | | | | | |
| 08 | 8/31/2010 | JE-000814 | G/L | 00324 | | | 28.00 | | 234,855.49 |
| Comments: | | JR: TO RECLASS ENTRIES FROM DISTRIBUTION | | | | | | | |
| 08 | 8/31/2010 | JE-000814 | G/L | 00324 | | | 220.00 | | 234,635.49 |
| Comments: | | JR: TO RECLASS ENTRY-MCCALLAN SUPPLIES | | | | | | | |
| 08 | 8/31/2010 | JE-000816 | G/L | 00324 | | | 392.86 | | 234,242.63 |
| Comments: | | JR:RECLASS ENTRY TO TRAVEL EXP | | | | | | | |
| 09 | 9/10/2010 | PR-100930 | G/L | B0930 | | 1,957.86 | | | 236,200.49 |
| Comments: | | WZG | | | | | | | |
| 09 | 9/24/2010 | PR-100930 | G/L | B0930 | | 1,957.86 | | | 238,158.35 |
| Comments: | | WZG | | | | | | | |
| 09 | 9/30/2010 | AP-001296 | A/P | 03204 | | 35.00 | | | 238,193.35 |
| Comments: | | 00FRAIRS /IN: 092610 JM:DISTRIBUTION | | | | | | | |
| 09 | 9/30/2010 | JE-000835 | G/L | 00339 | | | 35.00 | | 238,158.35 |
| Comments: | | Reclass Expense to Correct Account | | | | | | | |
| 10 | 10/8/2010 | PR-101102 | G/L | B1102 | | 1,957.86 | | | 240,116.21 |
| Comments: | | WZG | | | | | | | |
| 10 | 10/22/2010 | PR-101102 | G/L | B1102 | | 1,957.86 | | | 242,074.07 |
| Comments: | | WZG | | | | | | | |
| 10 | 10/29/2010 | AP-001307 | A/P | 03216 | | 10,000.00 | | | 252,074.07 |
| Comments: | | 00333INVE /IN: 101510 CW:DISTRIBUTION | | | | | | | |
| 10 | 10/29/2010 | AP-001320 | A/P | 03229 | | 36.00 | | | 252,110.07 |
| Comments: | | 00SHELL /IN: 102310 DH:GAS FOR JET SKIS | | | | | | | |
| 10 | 10/29/2010 | AP-001320 | A/P | 03229 | | 1,912.20 | | | 254,022.27 |
| Comments: | | 00SOUTHWE /IN: 101820 10 TM:PERSONAL | | | | | | | |
| 10 | 10/29/2010 | AP-001320 | A/P | 03229 | | 1,942.20 | | | 255,964.47 |
| Comments: | | 00SOUTHWE /IN: 101910-B TM:PERSONAL | | | | | | | |
| 10 | 10/29/2010 | AP-001320 | A/P | 03229 | | 1,912.20 | | | 257,876.67 |
| Comments: | | 00SOUTHWE /IN: 10192010 TM:PERSONAL | | | | | | | |
| 11 | 11/5/2010 | PR-101201 | G/L | B1201 | | 1,957.86 | | | 259,834.53 |
| Comments: | | WZG | | | | | | | |
| 11 | 11/19/2010 | PR-101201 | G/L | B1201 | | 1,957.86 | | | 261,792.39 |
| Comments: | | WZG | | | | | | | |
| 11 | 11/19/2010 | PR-101209 | G/L | B1209 | | | 1,957.86 | | 259,834.53 |
| Comments: | | WZG | | | | | | | |
| 11 | 11/19/2010 | PR-101209 | G/L | B1209 | | 1,957.86 | | | 261,792.39 |
| Comments: | | WZG | | | | | | | |

*[Handwritten annotation:]* journal entry to reclass biz expense. on this page is 944.86

*[Handwritten annotation:]* money went directly to TM

*[Handwritten annotation:]* money went directly to 3rd party

*[Handwritten annotation:]* money went to reclass biz expense

*[Handwritten annotation:]* Money went directly to TM

*[Handwritten annotation:]* Money went directly to 3 rd party

*[Handwritten annotation:]* Money that went directly to 3rd party on this page is 15,837.60

*[Handwritten annotation:]* Money went directly to TM

*[Handwritten annotation:]* Money directly to TM on this page is 11,747.16

Case 11-03007  Doc 807  Filed 06/07/19  Entered 06/07/19 18:07:50  Desc Main
Document  Page 36 of 54

Detail Postings for Period 01 Thru 12 Ending 12/31/2010

Account Number/Description

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|
| 11 | 11/30/2010 | AP-001366 | A/P | 03284 | | 75.00 | | | 261,867.39 |
| Comments: | | 00SHELL /IN: 11122010 DH:JET SKIS | | | *money went directly to 3rd party* | | | | |
| 11 | 11/30/2010 | JE-000886 | G/L | 00388 | | | 45,131.54 | | 216,735.85 |
| Comments: | | IND: TO RECLASS PAYROLL EXPENSE POSTED T | | | | | | | |
| 11 | 11/30/2010 | JE-000887 | G/L | 00389 | | *journal entry to reclass biz expense* | | 943.34 | | 215,792.51 |
| Comments: | | RECLASS SIRIUS & BUDS | | | | | | | |
| 12 | 12/3/2010 | PR-110103 | G/L | B0103 | | 1,957.86 | | | 217,750.37 |
| Comments: | | WZG | | | *Money went to TM directly* | | *money going directly to TM on this page 5,873.58* | | |
| 12 | 12/17/2010 | PR-110103 | G/L | B0103 | | 1,957.86 | | | 219,708.23 |
| Comments: | | WZG | | | | | | | |
| 12 | 12/30/2010 | JE-000885 | G/L | 00387 | | 3,271.14 | | | 222,979.37 |
| Comments: | | W/O DUE FROM BN TO EQUITY | | | *money went directly to another company* | | | | |
| 12 | 12/30/2010 | PR-110103 | G/L | B0103 | | 1,957.86 | | | 224,937.23 |
| Comments: | | WZG | | | *Money went directly to TM* | | | | |
| 12 | 12/31/2010 | AP-001393 | A/P | 03315 | | 308.99 | | | 225,246.22 |
| Comments: | | 00ATOMIX /IN: 122010 TM:PERSONAL | | | | | | | |
| 12 | 12/31/2010 | AP-001393 | A/P | 03315 | | 82.59 | | | 225,328.81 |
| Comments: | | 00INNOVAT /IN: 120810 TM:PERSONAL | | | | | | | |
| 12 | 12/31/2010 | AP-001393 | A/P | 03315 | | 87.59 | | | 225,416.40 |
| Comments: | | 00NORTHFI /IN: 121010 JM:PERSONAL | | | *Money went directly to a 3rd party* | | *money that went to 3rd party on this page is 1,104.43* | | |
| 12 | 12/31/2010 | AP-001393 | A/P | 03315 | | 55.86 | | | 225,472.26 |
| Comments: | | 00SHELL /IN: 122210 DH:TOP OFF JETSKIS | | | | | | | |
| 12 | 12/31/2010 | AP-001393 | A/P | 03315 | | 75.00 | | | 225,547.26 |
| Comments: | | 00SOUTHWE /IN: 122110 JM:CHARGE FOR DOG | | | | | | | |
| 12 | 12/31/2010 | AP-001395 | A/P | 03320 | | 419.40 | | | 225,966.66 |
| Comments: | | 00SOUTHWE /IN: 12262010 CW:PERSONAL | | | | | | | |
| 12 | 12/31/2010 | CR-005602 | A/R | 11880 | | 294,068.66 | | | 520,035.32 |
| Comments: | | The Achievable REF:APP | | | | | | | |
| 12 | 12/31/2010 | CR-005602 | A/R | 11880 | | 52.99 | | | 520,088.31 |
| Comments: | | ALESA GROUP REF:APP | | | | | | | |
| 12 | 12/31/2010 | CR-005602 | A/R | 11880 | | 94.21 | | | 520,182.52 |
| Comments: | | THE INTENET MILLIONAIRE REF:APP | | | *Money went directly to another company* | | | | |
| 12 | 12/31/2010 | CR-005602 | A/R | 11880 | | 1.23 | | | 520,183.75 |
| Comments: | | MYSKINNYMINI REF:APP | | | | | *Money went to another company on this page 2,577,552.43* | | |
| 12 | 12/31/2010 | CR-005602 | A/R | 11880 | | 29.86 | | | 520,213.61 |
| Comments: | | Reliance Debt REF:APP | | | | | | | |
| 12 | 12/31/2010 | CR-005602 | A/R | 11880 | | 8.41 | | | 520,222.02 |
| Comments: | | SYNERGY DEBT GROUP. INC REF:APPLY | | | | | | | |
| 12 | 12/31/2010 | CR-005602 | A/R | 11880 | | 5,518.83 | | | 525,740.85 |
| Comments: | | VORTEX DEBT REF:APP | | | | | | | |
| 12 | 12/31/2010 | JE-000888 | G/L | 00390 | | | 5,873.58 | | 519,867.27 |
| Comments: | | JR: TO CORRECT PAYROLL ENTRY IN WRONG GL | | | *journal entry* | | | | |
| 12 | 12/31/2010 | JE-000925 | G/L | 00419 | | 2,274,507.10 | | | 2,794,374.37 |
| | | | | | *journal entry for money to another company* | | | | |

Run Date: 7/29/2011 9:23:40AM

G/L Date: 7/28/2011

Page: 6

User Logon: smacpherson

11

SP033859

37

Case 11-03007   Doc 807   Filed 06/07/19   Entered 06/07/19 18:07:50   Desc Main
Document   Page 37 of 54

PB

AMERICORP, INC. (070)

Detail Postings for Period 01 Thru 12 Ending 12/31/2010

Account Number/Description

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|--------|------|---------|--------|-------|-------------------|-------|--------|------------|----------------|
| Comments: | | 2010 INTERCO TO EQUITY-SETON | | | | | | | |
| 12 | 12/31/2010 | JE-000925 | G/L | 00419 | | 411,732.94 | | | 3,206,107.31 |
| Comments: | | 2010 INTERCO TO EQUITY-ACHIEV | | | | | | | |
| 12 | 12/31/2010 | JE-000925 | G/L | 00419 | | 1,534.65 | | | 3,207,641.96 |
| Comments: | | 2010 INTERCO TO EQUITY-MYSKINNYMINI | | | | | | | |
| 12 | 12/31/2010 | JE-000925 | G/L | 00419 | | 137,690.36 | | | 3,345,332.32 |
| Comments: | | 2010 INTERCO TO EQUITY-VORTEX | | | | | | | |
| 12 | 12/31/2010 | JE-000925 | G/L | 00419 | | 817.00 | | | 3,346,149.32 |
| Comments: | | 2010 INTERCO TO EQUITY-IM | | | | | | | |
| | | | | | | 3,500.00 | | | 3,349,649.32 |

**Money went to another company via journal entry on this page 555,274.95**

| | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|---|---|---|---|---|---|
| | 183,836.41 | 3,223,255.42 | 57,442.51 | 3,165,812.91 | 3,349,649.32 |
| Report Total: | 183,836.41 | 3,223,255.42 | 57,442.51 | 3,165,812.91 | 3,349,649.32 A |

**For 2010 - The accounting records show distributions totaling over $3 million.**
No distributions reflected on the tax return or the K-1. Therefore, no distributions picked up on TX 257.

*Journal entries for business - 131,375.72*

**Total money that went to another company this year - 3,132,827.38**

*Total money that went to 3rd party - 34,291.10*

*Money that went to McCallan Directly = 51,155.12*

**Mr. Carol tries to convince the court that McCallan received 3 million dollars more than he originally thought. His assumption is proved completely wrong. Once the numbers are laid out by actual transactions we completely prove that McCallan on got 51,155.12. All of this money has been accounted for by Ms. Eckstein**

Case 11-03007    Doc 807    Filed 06/07/19    Entered 06/07/19 18:07:50    Desc Main
Document      Page 38 of 54

This exhibit proved that if Mr. Carol were to increase distribution numbers the he would now have to it by $3.1 million being moved between companies and reduce it again by $34,291 for money being paid directly to a third party. It is proven Mr. McCallan only received $51,000 which was accounted for by Ms. Eckstein. MAS200 and the accounting of actual monies received by McCallan now proves the Trustee and is basing the entire contempt case on estimates and assumptions rather than actual transactions proven by banks statements and general ledgers. This proves that McCallan's team has proven that their schedules details, the actual cash receipts versus the Trustees format using taxable distributions numbers which is not actual cash receipts.

**L. CRUCIAL EVIDENCE THAT PROVES USING DISTRIBUTIONS IS WRONG:** A Pivotal piece of evidence was submitted by the Trustee as Exhibit TX692. It was suggested that there is even more money available to McCallan than the Trustee originally thought and that McCallan is still keeping money hidden. The document showed a schedule K-1 for 2008 from Seton that shows a distribution made to McCallan for $10,619,987 which was included in Mr. Carol's TX677 as part of the $30.75 million. The next set of pages was the detailed general ledger of distributions for Seton in 2008. Reviewing these pages with notations, you will see that there are distributions made to McCallan directly, payments directly to 3rd parties, transfers between Seton and other companies, contributions from McCallan's personal accounts.


Trustee's Exhibit

692

671108

**Schedule K-1**
(Form 1120S)

**2008**

For calendar year 2008, or tax
year beginning _____ , 2008
ending _____ , ____ .

Department of the Treasury
Internal Revenue Service

|  |  | ☐ Final K-1 | ☐ Amended K-1 | OMB No. 1545-0130 |

**Shareholder's Share of Income, Deductions, Credits, etc.** ▶ See page 2 of form and separate instructions.

### Part I — Information About the Corporation

**A** Corporation's employer identification number
65-1201584

**B** Corporation's name, address, city, state, and ZIP code
SETON CORP
311 CROSSWAYS PARK DRIVE
WOODBURY, NY 11797

**C** IRS Center where corporation filed return
CINCINNATI, OH

### Part II — Information About the Shareholder

**D** Shareholder's identifying number
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

**E** Shareholder's name, address, city, state, and ZIP code
TIMOTHY MCCALLAN
17 CRESTON TERRACE
FORT SALONGA, NY 11768

**F** Shareholder's percentage of stock
ownership for tax year.................... 100 %

F O R   I R S   U S E   O N L Y

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|
| **1** Ordinary business income (loss) 9,868,366. | **13** Credits |
| **2** Net rental real estate income (loss) | |
| **3** Other net rental income (loss) | |
| **4** Interest income 63,301. | |
| **5a** Ordinary dividends | |
| **5b** Qualified dividends | **14** Foreign transactions |
| **6** Royalties | |
| **7** Net short-term capital gain (loss) | |
| **8a** Net long-term capital gain (loss) | |
| **8b** Collectibles (28%) gain (loss) | |
| **8c** Unrecaptured section 1250 gain | |
| **9** Net section 1231 gain (loss) | |
| **10** Other income (loss) | **15** Alternative minimum tax (AMT) items  A  -134. |
| **11** Section 179 deduction | **16** Items affecting shareholder basis  D  10,619,987. |
| **12** Other deductions  A  7,200. | |
| | **17** Other information  A  63,301. |
| | *See attached statement for additional information. |

**BAA For Paperwork Reduction Act Notice, see Instructions for Form 1120S.**  Schedule K-1 (Form 1120S) 2008
SHAREHOLDER 1

SPSA0412L  12/10/08

1                    SP042837

40

General Ledger Detail Report

Seton Corp (030)

Detail Postings for Period 01 Thru 12 Ending 12/31/2008

Account Number/Description
Period  Date  Journal  Source  Batch  Beginning Balance  Debit  Credit  Net Change  Ending Balance



240100-0-30                                    436,231.02
Distributions
01  1/1/2008  GJ-000003  G/L  00007                                        436,231.02              0.00
Comments:  Reversal: 2007 audit adj entries                    *journal entry correction*

01  1/8/2008  AP-000036  A/P                              2,000.00                          2,000.00
Comments:  00MCCTIMJ 010808  Dist to Tim Audley a        **Money went to 3rd party**
01  1/15/2008  AP-000040  A/P                             5,000.00                          7,000.00
Comments:  00DRYMAN 011508  Distr to Josh Dryman

01  1/15/2008  JE-000023  G/L                                              5,000.00          2,000.00
Comments:  Reclass to Due from SPG          **Money journaled from other company**

01  1/22/2008  AP-000045  A/P                            47,000.00                         49,000.00
Comments:  00DRYMAN 012208  Dist for start up ca        **Money went to 3rd party**
01  1/22/2008  AP-000046  A/P                             3,314.17                         52,314.17
Comments:  00VENABLE 978892  For Tim McCallan

01  1/22/2008  JE-000024  G/L                                             47,000.00          5,314.17
Comments:  Reclass to Due from SPG          **Money journaled from other company**

01  1/25/2008  AP-000049  A/P                             1,000.00                          6,314.17
Comments:  00DRYMAN 012508  For Cox Communiation        **Money went to 3rd party**

01  1/25/2008  JE-000025  G/L                                              1,000.00          5,314.17
Comments:  Reclass to Due from SPG          **Money journaled from other company**

01  1/28/2008  AP-000050  A/P                             5,000.00                         10,314.17
Comments:  00DRYMAN 012808  Dist to Tim        **Money went to 3rd party**

01  1/28/2008  JE-000026  G/L                                              5,000.00          5,314.17
Comments:  Reclass to Due from SPG          **Money journaled from other company**

01  1/31/2008  AP-000067  A/P                               778.50                          6,092.67
Comments:  00VENABLE 985595  Jan.08 exps        **Money went to 3rd party**
02  2/1/2008  AP-000051  A/P                              4,395.00                         10,487.67
Comments:  00RITCH  020108  As per Tim's request

02  2/8/2008  AP-000055  A/P                             50,000.00                         60,487.67
Comments:  00MCCTIMJ 020808  Distribution as per
02  2/8/2008  AP-000056  A/P                                             50,000.00         10,487.67
Comments:  00MCCTIMJ 020808  Rev - paid frm savin        **Money went to & from TM Directly**
02  2/8/2008  CR-000434  A/R                                             50,000.00         60,487.67
Comments:  DISTR TO TIM MCCA REF:WIRE

02  2/11/2008  AP-000059  A/P                            25,000.00                         85,487.67
Comments:  00STRATEG 021108  START UP FEES        **Money went to other**
02  2/11/2008  JE-000022  G/L                                            25,000.00         60,487.67
Comments:  relcass                          **company**

02  2/14/2008  AP-000060  A/P                           500,000.00                        560,487.67
Comments:  00MCCTIMJ 021408  Dist to Tim as per h        **Money went to TM directly**
03  3/3/2008  AP-000001  A/P                            30,000.00                         590,487.67
Comments:  00MCCTIMJ 030308  Dist to pay Tim's pe

Run Date:  8/26/2009  2:40:49PM                                                              Page: 1
G/L Date: 12/31/2008

41

Detail Postings for Period 01 Thru 12 Ending 12/31/2008

Account Number/Description

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|
| 03 | 3/11/2008 | AP-000005 | A/P | | | 2,200,000.00 | | | 2,790,487.67 |
| Comments: | | 00MCCTIMJ 031108 | Dist to Tim for xfr | | | *money went directly to TM* | | | |
| 03 | 3/31/2008 | AP-000013 | A/P | | | 3,593.24 | | | 2,794,080.91 |
| Comments: | | 00MCCTIMJ 033108 | Dist to Tim for Buds | | | *Money went directly to 3rd party* | | | |
| 04 | 4/7/2008 | AP-000016 | A/P | | | 20,000.00 | | | 2,814,080.91 |
| Comments: | | 00MCCTIMJ 040708 | Dist for peronal bil | | | *money went directly to McCallan* | | | |
| 04 | 4/14/2008 | AP-000018 | A/P | | | 750,000.00 | | | 3,564,080.91 |
| Comments: | | 00UNITED 1040-ES 08134-62-8932 & 078-62 | | | | | | | |
| 04 | 4/14/2008 | AP-000019 | A/P | | | 850,000.00 | | | 4,414,080.91 |
| Comments: | | 00UNITED 4868 2007 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 & 078-62 | | | | | | | |
| 04 | 4/14/2008 | AP-000020 | A/P | | | 160,000.00 | | | 4,574,080.91 |
| Comments: | | 00NYSINC IT-2105 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 | | | | *Money went directly to 3rd party taxes* | | | |
| 04 | 4/14/2008 | AP-000021 | A/P | | | 185,000.00 | | | 4,759,080.91 |
| Comments: | | 00NEWYORK 2007INCTAX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 | | | | | | *TM put back* | |
| 04 | 4/14/2008 | CR-000250 | A/R | | | | 800,000.00 | | 3,959,080.91 |
| Comments: | | XFR FRM MERRILL L REF:WIRE | | | *Money came directly from and went to TM* | | | | |
| 04 | 4/21/2008 | CR-000294 | A/R | | | | 1,000.00 | | 3,960,080.91 |
| Comments: | | DIST TO TIM FOR C REF:WIRE | | | | | | | |
| 04 | 4/25/2008 | AP-000031 | A/P | | | 9,248.00 | | | 3,969,328.91 |
| Comments: | | 00MCCTIMJ 042508 | Dist for Southland C | | | | | | |
| 05 | 5/1/2008 | AP-000033 | A/P | | | 1,180.00 | | | 3,970,508.91 |
| Comments: | | 00MCCTIMJ 050108 | For Buds Etc. | | | *Money went directly to 3rd party* | | | |
| 05 | 5/6/2008 | AP-000036 | A/P | | | 20,000.00 | | | 3,990,508.91 |
| Comments: | | 00MCCTIMJ 050608 | Dist For Chris Manzo | | | | | | |
| 05 | 5/14/2008 | AP-000040 | A/P | | | 25,000.00 | | | 4,015,508.91 |
| Comments: | | 00MCCTIMJ 051408 | DIST FOR PERSONAL BI | | | *Money went directly to TM* | | | |
| 05 | 5/23/2008 | AP-000045 | A/P | | | 51,250.00 | | | 4,066,758.91 |
| Comments: | | 00MCCTIMJ 052308 | Dist for Southland C | | | | | | |
| 05 | 5/30/2008 | AP-000047 | A/P | | | 939.98 | | | 4,067,698.89 |
| Comments: | | 00VENABLE 1010824 | For Tim McCallan | | | *Money went directly to 3rd party* | | | |
| 05 | 5/30/2008 | AP-000048 | A/P | | | 1,500.00 | | | 4,069,198.89 |
| Comments: | | 00MCCTIMJ 053008 | Dist to Josh Dryman | | | | | | |
| 05 | 5/30/2008 | JE-000039 | G/L | | | | 1,500.00 | | 4,067,698.89 |
| Comments: | | Reclass to Due frm SPG Officer | | | *money from other company* | | | | |
| 06 | 6/11/2008 | AP-000052 | A/P | | | 1,570.00 | | | 4,069,268.89 |
| Comments: | | 00MCCTIMJ 061108 | For Buds Etc. | | | *Money went directly to 3rd party* | | | |
| 06 | 6/12/2008 | AP-000053 | A/P | | | 100,016.00 | | | 4,169,284.89 |
| Comments: | | 00MCCTIMJ 061208 | Dist for Southland c | | | | | | |
| 06 | 6/12/2008 | CR-000580 | A/R | | | | 25,000.00 | | 4,194,284.89 |
| Comments: | | DIST TO T. MCCALL REF:WIRE | | | *Money went directly to TM* | | | | |
| 06 | 6/16/2008 | AP-000054 | A/P | | | 160,000.00 | | | 4,354,284.89 |
| Comments: | | 00NYSINC FMIT2105MN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 fm 2008 | | | | | | | |
| 06 | 6/16/2008 | AP-000054 | A/P | | | 750,000.00 | | | 5,104,284.89 |
| | | | | | *Money went directly to 3rd party taxes* | | | | |

Detail Postings for Period 01 Thru 12 Ending 12/31/2008

Account Number/Description

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|--------|------|---------|--------|-------|-------------------|-------|--------|------------|----------------|

Comments: 00UNITED FM1040ES 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 form 200

| 06 | 6/23/2008 | AP-000063 | A/P | | | 810.00 | | | 5,105,094.89 |

Comments: 00MCCTIMJ 062308 FOR AAA YACHT DETAIL

| 06 | 6/24/2008 | AP-000064 | A/P | | | 41,701.50 | | | 5,146,796.39 |

Comments: 00MCCTIMJ 062408 Dist for car — *money went directly to 3rd party*

| 06 | 6/27/2008 | AP-000065 | A/P | | | 8,094.46 | | | 5,154,890.85 |

Comments: 00VENABLE 1013956 Tim's estate plan

| 07 | 7/1/2008 | AP-000069 | A/P | | | 20,000.00 | | | 5,174,890.85 |

Comments: 00MCCTIMJ 070108 Dist for personal bi

| 07 | 7/1/2008 | AP-000069 | A/P | | | 5,000.00 | | | 5,179,890.85 |

Comments: 00MCCTIMJ 070108A Dist for personal bi — *Money went directly to TM*

| 07 | 7/25/2008 | AP-000082 | A/P | | | 20,000.00 | | | 5,199,890.85 |

Comments: 00MCCTIMJ 072508 Dist for personal bi

| 08 | 8/4/2008 | AP-000087 | A/P | | | 25,000.00 | | | 5,224,890.85 |

Comments: 00MCCTIMJ 080408 Dist for personal bi

| 08 | 8/26/2008 | AP-000103 | A/P | | | 10,000.00 | | | 5,234,890.85 |

Comments: 00MCCTIMJ 082608 Dist for Vortex Deb — *money went directly to other company*

| 08 | 8/26/2008 | AP-000104 | A/P | | | 20,000.00 | | | 5,254,890.85 |

Comments: 00MCCTIMJ 082608A Dist for personal bi

| 09 | 9/2/2008 | AP-000108 | A/P | | | 50,000.00 | | | 5,304,890.85 |

Comments: 00MCCTIMJ 090208 Dist to cover person — *Money went directly to TM*

| 09 | 9/22/2008 | AP-000121 | A/P | | | 20,000.00 | | | 5,324,890.85 |

Comments: 00MCCTIMJ 092208 Dist for personal bi

| 09 | 9/26/2008 | AP-000131 | A/P | | | 30,000.00 | | | 5,354,890.85 |

Comments: 00MCCTIMJ 092608 Dist for personal bi

| 10 | 10/3/2008 | AP-000134 | A/P | | | 160,000.00 | | | 5,514,890.85 |

Comments: 00NYSINC IT2105 08 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 — *Money went directly to 3rd party*

| 10 | 10/3/2008 | AP-000134 | A/P | | | 750,000.00 | | | 6,264,890.85 |

Comments: 00UNITED 1040ES 08 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 & 078-62

| 10 | 10/3/2008 | AP-000136 | A/P | | | 11,000.00 | | | 6,275,890.85 |

Comments: 00MCCTIMJ 100308 Dist to Vortex — *money went directly to other company*

| 10 | 10/6/2008 | AP-000138 | A/P | | | 10,000.00 | | | 6,285,890.85 |

Comments: 00MCCTIMJ 100608 Dist for personal bi — *Money went directly to TM*

| 10 | 10/10/2008 | AP-000146 | A/P | | | 25,000.00 | | | 6,310,890.85 |

Comments: 00MCCTIMJ 100908 Dist for Vortex — *Money went to other company*

| 11 | 11/13/2008 | AP-000168 | A/P | | | 7,000.00 | | | 6,317,890.85 |

Comments: 00MCCTIMJ 111308 Dist for Cascade Ven

| 11 | 11/18/2008 | AP-000174 | A/P | | | 30,000.00 | | | 6,347,890.85 |

Comments: 00MCCTIMJ 111808 Dist for personal bi — *Money went directly to TM*

| 12 | 12/2/2008 | AP-000184 | A/P | | | 50,000.00 | | | 6,397,890.85 |

Comments: 00MCCTIMJ 120208 Dist for personal bi

| 12 | 12/8/2008 | AP-000190 | A/P | | | 7,000.00 | | | 6,404,890.85 |

Comments: 00MCCTIMJ 120808 Dist for Cascade — *money went directly to other company*

Run Date: 8/26/2009 2:40:49PM
G/L Date: 12/31/2008

Page: 3

5

SP043323

General Ledger Detail Report

Seton Corp (030)



Detail Postings for Period 01 Thru 12 Ending 12/31/2008

Account Number/Description

| Period | Date | Journal | Source | Batch | Beginning Balance | Debit | Credit | Net Change | Ending Balance |
|---|---|---|---|---|---|---|---|---|---|
| 12 | 12/17/2008 | CR-001996 | A/R | 03189 | | 20,000.00 | | | 6,424,890.85 |
| Comments: | REF:WIRE | | | | | | | | |
| 12 | 12/30/2008 | AP-000207 | A/P | 00737 | | 160,000.00 | | | 6,584,890.85 |
| Comments: | 00NYSINC //N: 123008 2008 est tax | | | | | | | | |
| 12 | 12/31/2008 | JE-000137 | G/L | 00045 | | 1,280,000.00 | | | 7,864,890.85 |
| Comments: | DF:S&P adjustment booked (8/24/09) | | | | | | | | |
| 12 | 12/31/2008 | JE-000137 | G/L | 00045 | | 1,833,000.00 | | | 9,697,890.85 |
| Comments: | DF:S&P adjustment booked (8/24/09) | | | | | | | | |
| 12 | 12/31/2008 | JE-000137 | G/L | 00045 | | 920,183.01 | | | 10,618,073.86 |
| Comments: | DF:S&P adjustment booked (8/24/09) | | | | | | | | |
| | | | | | 436,231.02 | 11,552,573.86 | 1,370,731.02 | 10,181,842.84 | 10,618,073.86 |
| | | Report Total: | | | 436,231.02 | 11,552,573.86 | 1,370,731.02 | 10,181,842.84 | 10,618,073.86 |

Money went directly to TM

Money went directly to 3rd party taxes

money journaled with other companys

ADD: TAX AJE #1

10,619,986.

PBC

CT

RP

TB ACCT #

Shown as distributions to McCallan on K-1 and TX257

Seton's "Due From" other McCallan companies included in distributions to McCallan. These are beleivied to be advances of money by Seton to McCallan companies.

Run Date: 8/26/2009 2:40:49PM

G/L Date: 12/31/2008

Page: 4

SP043324

Case 11-03007   Doc 807   Filed 06/07/19   Entered 06/07/19 18:07:50   Desc Main
Document      Page 44 of 54

Summary of Seton Corporation 2008 distributions:

Total amount Trustee wants the court to believe McCallan received = 10,619,986

Total amount of money that went directly to 3rd parties = 4,133,390.85

Total amount of money that went to other companies = 4,033,683.01

Total money that were journal entries for business = 101,912.14

Total money McCallan put back in = 800,000.00

Total money McCallan actually Received = 3,151,000


This proved the Trustees original $30.75 million is unreliable. The Trustee's suggestion to this Court that McCallan received this entire $10.6 million is misleading when McCallan only received $3,151,000 which has been accounted for by Ms. Eckstein. From that money he returned back to the company $800,000 which Ms. Eckstein has correctly accounted for. The Trustee's assumption that $16 million dollars is still being secreted needs to be reduced by the $8,268,986.00 (money to 3rd parties plus money to other companies plus journal entries) in this one sample alone. The Trustee has based the entire case on estimates and assumptions rather than actual transactions proven by banks statements, documents and MAS200 General Ledgers. This exhibit proved McCallan explanation as to where the money came from and where it has ultimately been distributed to using actual cash receipts versus the Trustees format using taxable distributions numbers. Using taxable numbers is artificially inflates the numbers leading the Court to believe.

**M. MCCALLAN HAS NO MONEY FOR HIS FAMILY TO USE**: Mrs. McCallan has put in thousands of hours working on the discovery for this case and as a result she has had no choice but to close of both her boutiques. Along with her own earnings, she has lived off credit

Case 11-03007   Doc 807   Filed 06/07/19   Entered 06/07/19 18:07:50   Desc Main
Document      Page 45 of 54

cards and loans from friends and family to sustain most her bills and children's school bills. She has testified under oath her struggles. Mrs. McCallan has been very fortunate with family members and friends that have helped her sustain maintenance and repairs in a home that is mortgage free along with doing much of the maintaining herself, both inside and out. The choice to leave her position as a Salesperson with a Mercedes dealership was based on the economic need for more money, as well as the need to be with her three children who are also suffering due to the pain of missing their father. Mrs. McCallan chose to accept a sales position that will allow her to work from home instead of the 70 hours a week required at the Mercedes dealership which included Saturdays and Sundays.

In summary, McCallan's production of evidence has always been based on fact, evidence, true math calculations and the real amount of money that McCallan had in his possession. The Trustee's numbers have all been based on assumptions. The original assumption that McCallan actually received $32 million was incorrect. The assumption that McCallan spent $14.75 million over the 12 years was incorrect. The assumption that the original $32 million was going to be increased was incorrect. The assumption that McCallan has a Swiss bank account was incorrect. The assumption that McCallan has a company in Ireland was incorrect. The assumption that there are coins hidden was incorrect. The assumption that there is more cash on hand was incorrect. The assumption that Jeannie McCallan is now using the hidden money, the very same money that we just spent 19 months proving every movement of, is incorrect. The assumption that McCallan is lying when he says this case has completely destroyed him for no reason was incorrect. The assumption that there is more money anywhere is incorrect.

The Trustee has presented assumption after assumption. Each assumption has been proven incorrect. The Trustee did not present any real hard evidence that McCallan still has hidden money. The Trustee has asserted to the Court its faulty assumptions forcing McCallan to prove several negatives. After reviewing all of the evidence it is clear that McCallan has produced all of the documents required by the post-judgment discovery request, accounted for the large majority of his available monies and there are no hidden assets.

CONCLUSION OF LAW

**APPLICABLE LAWS:**

1. A hallmark of civil contempt is the contemnor's ability to "purge the contempt and obtain his release by committing an affirmative act," thus "carr[ying] the keys of his prison in his own pocket." *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994).

2. A sanction is "punitive and criminal if it is imposed retrospectively for a completed act of disobedience, such as the contemnor cannot avoid or abbreviate the confinement through later compliance." *Bagwell* at 828-29.

3. "A troublesome aspect of a trial court's power to impose sanctions, either as a result of a finding of contempt, pursuant to the court's inherent power, or under a variety of rules … is that the trial court may act as accuser, fact finder, and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed." *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 128 (2d Cir. 1998).

4. "The absence of limitations and procedures can lead to unfairness or abuse" and "[f]or that reason, appellate courts have ruled that, in certain sanctions proceedings, the person facing

imposition of sanctions should have the benefit of the procedural protections available to a person charged with a crime" including "the right to a public trial … presumption of innocence … and the requirement of proof beyond a reasonable doubt." *Id.*

5. "[W]hen civil contempt sanctions lose their coercive effect, they become punitive and violate the contemner's due process rights." *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1530 (11th Cir.1992).

6. It is within this Court's inherent authority to enforce its own orders. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-31 (1962) (holding that judicial power to dismiss arises from court's inherent authority to enforce its orders); see also *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999) (recognizing that court has broad authority under Rule 37 to control discovery and enforce its orders).

7. In a contempt proceeding for failure to comply with a court order, the contemnor has a defense if it is factually impossible to comply with the order. *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552–53, 75 L.Ed.2d 521 (1983); *Maggio v. Zeitz,* 333 U.S. 56, 75–76, 68 S.Ct. 401, 411–12, 92 L.Ed. 476 (1948). While the court is bound by the enforcement order, it will not be blind to evidence that compliance is now factually impossible. Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action. It is settled, however, that in raising this defense, the defendant has a burden of production. *McPhaul v. United States,* 364 U.S. 372, 379, 81 S.Ct. 138, 142, 5 L.Ed.2d 136 (1960); *Maggio v. Zeitz,* 333 U.S., at 75-76, 68 S.Ct., at 411-412; *Oriel v. Russell,* 278 U.S., at 366, 49 S.Ct., at 175. See also *United States v. Fleischman,* 339 U.S., at 362-363, 70 S.Ct., at 746

**MEMORANDUM IN SUPPORT:**

The February 6, 2018 Order of this Court was clear as to the requirements for Defendant McCallan to purge his contempt. Defendant was required to demonstrate that he had purged himself of contempt by complying with the following conditions: (1) he must provide updated responses to specifically enumerated discovery requests, including two sets of interrogatories and three sets of requests for production; (2) he must file an updated accounting for the $498,000 that was in the Wells Fargo account; (3) he must amend his bankruptcy schedules and statement of financial affairs in bankruptcy case number 17-30961; and (4) he must file a certification that he has complied with the February 6, 2018 Order. (Doc. 629, pp. 2-3).

It is uncontested that Defendant's discovery responses pursuant to the February 6, 2018 Order were complete. Judge Sawyer acknowledged that fact within his oral pronouncement on May 25, 2018 by stating "I want to make clear that – and Mr. McCallan with Ms. Eckstein's help did, in fact, file a complete set of responses, answers to interrogatories, requests for production of documents. We've got the document. We've looked at them. We went through them in some detail. And after a couple of hours or so, I stopped Mr. Widerman and said, okay, I get it, you filed complete responses. If I was – I think if anybody was simply looking at the interrogatories and the responses, they'd say, yes, these are full, complete responses to what's asked. (Hr'g TR, 216-17:22-25/ 1-6, May 25, 2018) However, despite filing complete responses to the documents required to purge his contempt, Defendant McCallan is still in jail for the same continued contempt.

It is within this Court's inherent authority to enforce its own orders. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-31 (1962) (holding that judicial power to dismiss arises from court's inherent authority to enforce its orders); *see also Gratton v. Great American*

*Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999) (recognizing that court has broad authority under Rule 37 to control discovery and enforce its orders). The continued civil incarceration of Defendant McCallan has created an expensive, time consuming, and thus far ineffective path forward in this case.

The May 23, 2018 "Memorandum Decision" filed by this Court and incorporated by reference within the May 29, 2018 Order, contains a new purge requirement never mentioned in prior Orders. Judge Sawyer stated "[T]he bottom line remains simple. McCallan owed more than $100,000,000. The evidence shows and the Court finds McCallan has secreted millions of dollars' worth of money and property in locations presently unknown to the Trustee. Until he discloses all of his property and turns over all of his ill-gotten gains, he remains in contempt." (Doc. 707, pp. 34-35). It is certainly within this Court's authority to provide new purge requirements.

Defendant McCallan has disclosed all of his property. However, McCallan asserts that he cannot comply with the various court orders because he does not have the ability to "turn over all of his ill-gotten gains". First, he has proven that the Trustee's previous assertion that he has secreted over $16 million is an incorrect assumption. Second, he has proven that he has no funds to repay these loans. He has no secret bank accounts, no overseas accounts and no hidden cash or coins. The case law is clear that when a defendant raises the defense of impossibility, the defendant has a burden of production. McCallan has meet that burden. The Trustee would suggest that McCallan has not met that burden. The Trustee is asking McCallan to prove that he DOES NOT have any overseas accounts. To do this, McCallan would theoretically need to contact every bank on the face of the planet and ask for an affidavit stating that he, his family or any of his companies do not have an account with that bank. That would be an impossible and futile task. Proving that he does not have any hard, actual cash would even be a more monumental task. McCallan did

provide bank statements and data from MAS200 that prove that there are not transfers of monies to overseas accounts.

On July 9, 2018 the Court held a status conference. Counsel for McCallan asked how McCallan could comply with the Contempt Order. The court indicated that McCallan had to simply tell the truth. It is evident now after the reports generated from MAS200 that McCallan is and was telling the truth about the whereabouts of all assets. It is evident that the Trustee will not be satisfied that McCallan has purged these contempt orders until McCallan has delivered the entire $102 million judgment plus the added sanctions imposed by this Court. This is an impossible task, yet the Trustee continues to push for McCallan's incarceration, even though the Trustee has all of the required information. Based on the questions at the May 6 and 7, 2019 hearing, the Trustee wants to punish McCallan for:

-   Data base discovery problems in 2013

-   alleged documents dumps

-   alleged tax fraud

-   constantly updating a spreadsheet as information is made available

-   Mr. Carrol having to do more work.

-    having his children in private school.  Even though he saved money in 529 plans

-   his wife not moving out of their home, even though it would be more expensive to
    move

-   his wife for not working 70 hours a week to the detriment of her children.

-   Ultimately, for the acts that led to the $102 mil judgment.

Contempt of Court CANNOT be used to punish civil litigants. Contempt of Court can only be used to coerce a litigant to do something. In this case, it is to coerce Tim to turn over all

financial documents and to account for all the money that he received. He has done both. To hold him for one more day is criminal. The number one proof that McCallan has no hidden money is that he has sat in the Montgomery City and County Jail for over a year and a half, and there has not been one dollar, one account, or one gold coin disclosed or found. No matter what McCallan has done in the past, no matter how strange the transactions looks – he is not hiding information and he is not hiding money. Therefore, McCallan has satisfied his purge requirements and is entitled to be released from civil incarceration.

## CONCLUSION

This Court has ordered the incarceration of McCallan "until he discloses all of his property and turns over all of his ill-gotten gains." Over the course of the past eighteen months, McCallan has diligently worked to provide all requested documentation and records and answer all questions of the Trustee. Based upon the factual findings made above, it is clear to the Court that McCallan has satisfied the Court's purge requirement to the best of his ability by providing everything within his care, custody and control. Further incarceration would be criminal, and thus improper. McCallan must therefore be immediately released from incarceration.

Respectfully submitted by,

*/s/ Michael A. Fritz, Sr.*

Michael A. Fritz, Sr.

**OF COUNSEL**:
Fritz Law Firm, LLC
25 South Court Street
Suite 200
Montgomery, AL 36104
334-230-9790

334-230-9789 (fax)
Attorney for Defendant Timothy McCallan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 7th day of June, 2019, I served the foregoing by email and/or US Mail, postage pre-paid to the following:

STEVE OLEN
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, AL 36604
**sco@cunninghambounds.com**

LUCY E. TUFTS
Cunningham Bounds, LLC
1601 Dauphin Street
Mobile, AL 36604
**let@cunninghambounds.com**

Carly Wilkins, Chapter 7 Trustee
560 S McDonough St, Ste. A
Montgomery, AL 36104
**cwilkins@hammwilkins.com**

   /s/ Michael A. Fritz, Sr.
Michael A. Fritz, Sr.

APPENDIX A

