**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                    Case No. 10-30631-WRS
                                                         Chapter 7

ALLEGRO LAW LLC,

            Debtor.
_____

CARLY B. WILKINS,

            Plaintiff,                                   Adv. Pro. No. 11-3007-WRS

    v.

AMERICORP INC., et al.,

            Defendants.

## MEMORANDUM DECISION

This Adversary Proceeding came before the Court for hearing on September 17, 2019, on

Defendant Timothy McCallan's Motion for Immediate Release. (Doc. 810).  Plaintiff Carly

Wilkins has filed a response. (Doc. 813).  For the reasons set forth below, the motion is denied.

## I.  Facts

Defendant Timothy McCallan was jailed for contempt of court on October 23, 2017, and

remains in custody.  On July 31, 2019, more than 21 months later, McCallan filed a motion seeking

release pursuant to 28 U.S.C. § 1826.  (Doc. 810).  As the facts are established by reference to the

record, it was not necessary to hear evidence.  This motion turns on the question of whether

McCallan's contempt is solely for his failure "to testify or provide other information," or whether

his contempt is based, at least in part, on his failure to turn over his ill-gotten gains.  If it is the

former, the motion should be granted and McCallan released from custody; if it is the latter, the 18-month cap is not applicable and McCallan will remain in jail.

## II. Law

### A. Jurisdiction

This Court has jurisdiction to hear this proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b). This is a final order.

### B. McCallan is not entitled to be released pursuant to 28 U.S.C. § 1826

The Court will divide its consideration of this issue into three parts. In Part 1, the Court will consider whether incarceration pursuant to an order of contempt in a bankruptcy proceeding is within the scope of § 1826. In Part 2, the Court will consider whether contempt proceedings based on nontestimonial, noninformational conduct are subject to the 18-month limitation of § 1826. In Part 3, the Court will consider whether the orders under which McCallan are being held in custody are, in part, for other than refusal to testify or provide other information.

#### 1. Section 1826 applies to bankruptcy proceedings

The instant motion is predicated on 28 U.S.C. § 1826(a), which provides as follows:

> Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is

willing to give such testimony or provide such information.  No period of such confinement shall exceed the life of–

    (1) the court proceeding, or

    (2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

First, the Court will consider whether bankruptcy proceedings such as this are a "proceeding before or ancillary to any court or grand jury of the United States" within the meaning of § 1826.  The Eleventh Circuit held that they are in *In re Younger*, 986 F.2d 1376 (11th Cir. 1993).  In *Younger*, a debtor in a Chapter 7 bankruptcy case was held in civil contempt and jailed for his refusal to testify at an examination conducted pursuant to Bankruptcy Rule 2004.  *Id.*; *see also Sheldon v. Horowitz (In re Donald Sheldon & Co., Inc.)*, 36 Fed. Appx. 659 (2d Cir. 2002) (dismissing habeas corpus petition as moot as the underlying bankruptcy proceedings had closed and the court had lost the power to confine, citing 28 U.S.C. § 1826); *In re Fulcher*, No. 10-169, 2010 WL 3087488 (Bankr. E.D.N.C. Aug. 3, 2010) (holding that § 1826 applied, and that the debtor there was not a recalcitrant witness).  The 18-month cap of § 1826 applies to incarceration for contempt of court stemming from bankruptcy proceedings.

### 2.  The 18-month cap of § 1826 applies only to incarceration for contempts for the failure to testify or provide information.

Having determined that § 1826 applies to this proceeding, the next question is whether it applies to this contempt.  Not all incarceration for civil contempt of court is subject to the 18-month limitation provided in § 1826.  Examination of the statute and case law reveals that the 18-month cap applies only to incarceration for contempt of court predicated solely on a refusal to give

testimony or provide information. Had Congress intended the 18-month cap of § 1826 to apply to all incarceration for civil contempt, it would not have so limited the reach of that statute. On the other hand, if one is incarcerated for contempt of court, that is predicated on something other than the failure to testify or provide information, the eighteen-month limitation of § 1826 does not apply. This conclusion follows naturally from the plain language of the statute and is supported by reported case law.

The principle that the eighteen-month cap of § 1826 applies only to contempt which was predicated on the failure to give testimony or provide information was set out in a decision handed down by the Second Circuit. *Armstrong v. Guccione*, 470 F.3d 89 (2d Cir. 2006). Armstrong was ordered to turn over corporate records and assets worth $16 million. *Id*. at 91. After his confinement exceeded 18 months, he moved for his release, citing 28 U.S.C. § 1826. *Id*. at 108. The Court in *Armstrong* recognized that Armstrong was held in contempt for conduct which was, in part, testimonial. However, money and valuable property were ordered turned over because they had value in an of themselves and not because they had any testimonial or informational value. The Second Circuit, affirming the District Court, held that "[a]n order requiring the production of money or valuable property, for the purpose of restoring it to its rightful owner, is not an order to provide 'information,' and does not fall under the terms of § 1826(a)." *Id.* at 110.

The positions of McCallan and Armstrong are analogous. Both contemnors were ordered to produce information along with money and items of monetary value. As Armstrong's contempt was predicated both on his failure to provide information and to turn over valuable property, his contempt was not based solely on his refusal to testify or provide information. The same may be said of McCallan. When one is jailed for civil contempt of court for the failure to turn over ill-gotten gains, the contemnor's incarceration is not subject to the eighteen-month cap of § 1826.

-4-

*United States v. Thompson*, 925 F.3d 292, 303-04 (6th Cir. 2019) (holding that the 18-month cap of § 1826 did not apply because the contemnor was required to assist in identifying and turning over assets and not just to give testimony); *see also United States v. Harris*, No. 03-354, 2008 WL 482347, * 4-5 (D.N.J. 2/20/2008) (holding that the 18-month limit of § 1826 did not apply to nontestimonial conduct, i.e. sending document purporting to create liens), *aff'd*, 582 F.3d 512 (3d Cir. 2009), *cert. denied*, 559 U.S. 997 (2010).

It is interesting to note that both Armstrong's and Thompson's contempts were based, in part, on their failure to produce gold bullion or gold coins. Wilkins has produced evidence in this case that McCallan has been concealing his assets, in part with a scheme to buy and sell gold coins–which he has not truthfully disclosed to the Court. Gold has great monetary value, can easily be bought, sold, concealed or transferred, without leaving an audit trace–perfect for McCallan's purposes here, as was also the case in *Armstrong* and *Thompson*. Both *Armstrong* and *Thompson* support the proposition that § 1826 does not provide McCallan relief here because he is held in contempt not just on orders to provide information, but also to turn over money and valuable property.

McCallan has proven himself quite adept at moving money, gold coins, and other things of value, staying one step ahead of the Trustee. As was demonstrated through the Trustee's effort to acquire the funds held in the Wells Fargo bank account, as soon as the Trustee learned of the account, he moved the money, leaving the Trustee and creditors frustrated. The Court has ordered McCallan to turn over his money and property to the Trustee. McCallan attempts to couch this proceeding solely in terms of answers to interrogatories, which are always historical, hence leaving the Trustee forever one step behind. McCallan has been under an order to turn over his ill-gotten gains since May 25, 2018--he cannot credibly argue either ignorance or surprise.

-5-

Further support for the proposition that the eighteen-month limit of § 1826 applies only to testimonial conduct may be found in *In re Lawrence*. Lawrence was first incarcerated for civil contempt on October 5, 1999, for his failure to turn over assets to the Chapter 7 Trustee. *In re Lawrence*, 251 B.R. 630, 649 (S.D. Fla. 2000). On January 23, 2002, more than two years later, the Eleventh Circuit affirmed the Bankruptcy Court's Order, approving Lawrence's continued incarceration. *Lawrence v. Goldberg*, 279 F.3d 1294 (11th Cir. 2002). The Eleventh Circuit directed the Bankruptcy Court to continue to review Lawrence's incarceration to determine whether it was still coercive. *Id*. at 1300-01. On December 13, 2006, more than seven years after Lawrence was first incarcerated, the District Court ordered Lawrence released, not because the eighteen-month limit of § 1826 had passed, but rather because it was then determined that Lawrence's incarceration was no longer coercive. *In re Lawrence*, Case No. 05-20485, 2006 WL 8436247 (S.D. Fla. 12/13/2006).

In a recent case handed down in the Central District of California, the Bankruptcy Court refused to release an individual who had been jailed for more than four years for contempt. *In re Kenny G. Enterprises, LLC*, No. 11-24750, 2019 WL 508774 (Bankr. C.D. Cal. 2/7/2019). The issue in *Kenny G.* is whether the contemnor's incarceration had lost its coercive effect. The Bankruptcy Court found that it had not. The eighteen-month cap of § 1826 does not appear to have been argued in *Kenny G*.

### 3. The Court's orders to McCallan call for him to turn over assets and therefore, the 18-month cap of § 1826 does not apply.

As McCallan is held in contempt of court for his failure to turn over his ill-gotten gains, and not solely for his failure testify or provide information, the 18-month cap of § 1826 does not

apply. The Court has detailed McCallan's misdeeds in Memorandum Decisions dated May 23, 2018, and September 17, 2019. (Docs. 707, 818). In this Court's May 23, 2018 Memorandum Decision, the Court stated that "[t]he evidence shows and the Court finds that McCallan has secreted millions of dollars' worth of money and property in locations presently unknown to the Trustee. Until he discloses all of his property and *turns over all of his ill-gotten gains,* he remains in contempt. (Doc. 707, p. 34) (italics added).

In this Court's Order of October 2, 2018, it states that

> the Trustee has produced a massive amount of evidence supporting her contention that McCallan is and remains in contempt for his failure to turn over his assets to her. The Court has determined that McCallan has secreted assets with a value of $16.2 million and has ordered and continues to order that they be turned over to the Trustee. McCallan's efforts in the future should be geared towards returning his ill-gotten gains to the Trustee so that she can distribute them to McCallan's many victims. *Once the money is turned over, the Court will release McCallan.*

(Doc. 771, p. 2) (italics added).

The District Court has previously considered the nature of McCallan's contempt finding that "McCallan holds the keys to his jail cell. 'Until he discloses all of his property and turns over his ill-gotten gains, he remains in contempt.'" *McCallan v. Wilkins*, No. 18-CV-604, 2018 WL 4409386, *4 (M.D. Ala. 9/18/18).

At the September 17, 2019 hearing, McCallan's lawyer made the following argument:

> The problem I have is that I don't believe the Court, I don't believe the trustee, I don't believe anybody can point to the asset that has been specifically ordered and been told we can't do, we won't do. So, Your Honor, the question becomes what thing can be given? What thing can be done?

(Doc. 843, p. 7). The thing to be done is for McCallan to turn over his assets. McCallan keeps moving his money and property and changing their form. For example, he buys and sells gold coins, changing their form between that and cash, all in an effort to thwart the Trustee. The Trustee's accountant has identified 150 different bank accounts used by McCallan–and the total keeps growing. The form of McCallan's assets is not known to the Trustee–that is what she is trying to find out, with a view of getting them turned over to her so she can convert McCallan's property, in whatever form, into cash, so that it may be distributed to creditors. McCallan's argument that the Trustee doesn't know where his assets are or what form they are in is not a valid argument to show he is not in contempt, rather it is a taunt.

McCallan has complained that the Court keeps moving the goal posts, changing both its reasoning for why he is held in contempt and what he must do to purge himself. To be sure, there was a significant change once McCallan filed facially complete answers to interrogatories and responses to the Trustee's request for production of documents. This was discussed at length by the Court on May 25, 2018. (Doc. 716, pp. 216-223) (Transcript of proceedings May 25, 2018). As McCallan keeps moving his assets and concealing their whereabouts from the Trustee, she must necessarily adjust to a constantly moving playing field. McCallan cannot continually hide and secrete assets on the one hand and then complain, on the other, that the Trustee continues to chase him. The Court need not and should not make the Trustee stand still while McCallan continues to secrete assets.

Case 11-03007    Doc 855    Filed 11/14/19    Entered 11/14/19 16:18:29    Desc Main
Document    Page 8 of 9

### III. Conclusion

The question before this Court is whether McCallan should be released due to the 18-month cap of 28 U.S.C. § 1826. First, as bankruptcy proceedings are within the scope of proceedings which are subject to § 1826, the Court must consider McCallan's request on the merits. Second, the 18-month cap of § 1826 provides relief only when one is incarcerated for contempt of court for the failure to give testimony or provide information. Contempt arising from nontestimonial conduct is not within the scope of the statute. Third, the orders under which McCallan is held have nontestimonial aspects and, for that reason, his incarceration is not within the scope of § 1826. For these reasons, McCallan's motion for release is denied. The Court will enter an Order by way of a separate document.

Done this 14th day of November, 2019.

William R. Sawyer
United States Bankruptcy Judge

c:      Steve Olen, Attorney for Plaintiff
        Lucy E. Tufts, Attorney for Plaintiff
        Michael A. Fritz, Sr., Attorney for Timothy McCallan
        Scott D. Widerman, Attorney for Timothy McCallan
        Carly B. Wilkins, Trustee